Argued September 13, reversed and remanded October 3, 1978

# STAFFORD PROPERTIES OF OREGON, INC., *Respondent,*
*v.*
# BEN METZ, INC., *Appellant.*
## (TC 423-183, SC 25471)

584 P2d 750

Gregg C. Sayre, Portland, argued the cause for appellant. With him on the briefs were Marvin S. W. Swire and Rosenberg, Swire & Riebe, Portland.

Gerald R. Pullen, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue, Bryson and Linde, Justices.

TONGUE, J.

**TONGUE, J.**

This is an action for constructive eviction brought by a tenant against a landlord after a breakdown of the heating system of a leased nursing home, and for conversion by the landlord of goods and supplies purchased by the tenant and on the premises at the time of the alleged constructive eviction. The case was tried before a jury, which returned a verdict in favor of the plaintiff for $20,200 on the cause of action for constructive eviction and $1,000 on the cause of action for conversion. Defendant appeals from the resulting judgment.

Defendant's principal contention is that the trial court erred in ruling as a matter of law that under the terms of the lease the landlord, and not the tenant, had the duty to repair the heating system.

The lease included the following provision:

"* * * Tenant, at its own cost and expense, will also keep and maintain said premises, and all buildings and improvements thereon, and all sidewalks and ways adjacent thereto, in a clean, safe and sanitary condition, and in a good state of repair, except that Landlord shall keep and maintain in good condition and repair at its expense, the exterior of said leased premises and the structural integrity and strength of any buildings thereon. * * *"

The heating system of the nursing home consisted of hot water pipes imbedded in the cement floors of the building which heated hot water radiators on the premises. The failure of the system was caused by leaks in some of those pipes, which were found to be seriously deteriorated when the concrete floor around the pipes was removed by the use of a jackhammer.

Defendant contends that, as a general rule, and in the absence of a special agreement to make repairs to leased premises, the landlord is under no duty to do so, citing *McWilliam v. Phillips Petroleum, Inc.,* 269 Or 526, 528, 525 P2d 1011 (1974); that under the lease provisions above quoted, the duty of repairing the

[ 5 ]

heating system is upon the tenant as a matter of law, rather than upon the landlord, because pipes running through the concrete floor were "not a part of the structural integrity, strength or exterior of the building" so as to impose the duty upon the landlord to repair such pipes; that as the lease was drafted by the tenant's attorney, any ambiguity in its meaning should be resolved against the tenant, citing *Marmon v. Vaughan Motor Co., Inc.,* 184 Or 103, 141, 194 P2d 992 (1948), and that even if the lease did not clearly put the repair obligation on the plaintiff, the question should have been submitted to the jury as a matter of "practical construction" because the evidence was in conflict as to how the parties practically construed the lease.

■ We agree with the trial judge in holding, in effect, that this is a proper case in which to consider the "practical construction" of the lease by the parties in deciding whether the landlord had the duty to repair the heating system.[1] When, however, there is a *conflict* in the evidence relating to statements or conduct by parties to a contract relied upon as evidence of their practical construction of the contract, it is for the jury, rather than the trial judge, to resolve such a conflict, under appropriate instructions by the trial court.[2]

---

[1] Some of our previous decisions hold that evidence of the "practical construction" of a contract by the parties is only admissible when the terms of a contract are ambiguous. *See* e.g., *Bakkensen v. Hancock M. Life Ins. Co.,* 222 Or 484, 493, 353 P2d 558 (1960), and *Lakeshore Dist. v. Calif.-Ore. Power Co.,* 162 Or 26, 35, 90 P2d 1038 (1939). Other, and more recent decisions, without citing, much less overruling those previous decisions, hold that if the conduct of the parties is inconsistent with the terms of the written contract, their conduct will control. *See Jenkins v. AAA Heating,* 245 Or 382, 385, 421 P2d 971 (1966); *Wallowa Valley Stages v. Oregonian,* 235 Or 594, 597, 386 P2d 430, 431 (1963), overruled on other grounds. In this case no objection was made to the offer of such evidence. In any event, we need not resolve any conflict between those cases because we believe that the terms of this lease were sufficiently "unclear" or "ambiguous" so as to make it proper to consider evidence of its "practical construction" by the parties. See also 3 Corbin on Contracts 249-262, § 558 (1960).

[2] *See Wilkens v. West. States Groc. Co.,* 167 Or 103, 112, 114 P2d 542 (1941), and *Weber v. Kamyr, Inc.,* 269 Or 617, 632, 525 P2d 1307 (1974). *See also* Annot., 65 ALR 648 (1930). *Cf. May v. Chicago Insurance Co.,* 260 Or 285, 293-294, 490 P2d 150 (1971).

The evidence of practical construction consisted primarily of testimony that Mr. Metz (defendant's president), when informed of the problem, agreed to repair the heating system and then proceeded to do so. Mr. Metz testified, however, that the only reason that he made the repairs was that Mr. Stafford (plaintiff's president) had said that plaintiff was broke. Mr. Metz testified that as plaintiff was unable to make the repairs, he concluded that the only way that the nursing home could be kept open was for defendant to make the repairs and determine later whose obligation it was.

It was for the jury to decide whether Mr. Metz agreed to make the repairs, and later did so, because of his understanding that defendant had a duty to do so under the terms of the lease, or whether his reasons for doing so were as claimed by him.[3] In other words, the credibility of that testimony was for the jury to decide.

It follows that the trial court erred in failing to submit the question of the parties' practical construction of the lease to the jury and in holding, as a matter of law, that defendant had the duty to repair the heating system.[4] It also follows that because of that error this case must be reversed and remanded for a new trial.

Defendant also contends that the trial court erred in its submission to the jury of plaintiff's second cause of action for conversion in that under the terms of the

[3] *See* 3 Corbin on Contracts 259-260, § 558 (1960).

[4] Essentially the same issue is raised by defendant's contention that the trial court erred in withdrawing its counterclaim for damages for plaintiff's alleged failure to repair the heating system.

We have not overlooked defendant's contention that because the lease provision in dispute was drafted by plaintiff's attorney it must be construed against plaintiff and in favor of defendant. In response, plaintiff contends that it is also a rule of contract construction that an ambiguous term in a lease must be construed in favor of the lessee. We hold, however, that neither of these "rules" of contract construction can prevail against evidence of "practical construction" of a contract by the parties. *See* 3 Corbin supra, n.3, at 262, § 559.

[ 7 ]

lease all of the personal property involved reverted to the landlord upon the "termination" of the lease; that, in any event, the identity of such property was not established by plaintiff with the required "certainty"; and that the instruction to the jury that the measure of damages for the conversion of such property was its reasonable market value was erroneous because defendant had a reversionary interest in it.

■ We agree, however, with the holding by the trial court that the circumstances under which defendant took possession of the nursing home did not constitute a "termination" of the lease for the purpose of causing a reversion to the landlord of such personal property. As for defendant's claim of indefiniteness in plaintiff's evidence identifying the personal property involved, we would assume that any such deficiency can be cured upon retrial of this case, as required for the other reasons previously stated.[5]

■ Because, however, plaintiff's interest in such property would have reverted to the defendant at the end of the term of the lease, we agree with defendant's contention that the court erred in its instruction as to the measure of damages, and that the proper measure of damages for conversion under the facts of this case would be the reasonable value of the use of such property for the remainder of the term of the lease.

■ Plaintiff, in its brief as respondent, has assigned as error the striking from plaintiff's complaint of the allegations of punitive damages. The trial court did so upon the ground that "there's just not enough evidence." We agree.

The only evidence relied upon by plaintiff in support of its claim of punitive damages was testimony by a Mr. Cleveland that prior to the breakdown in the heating system defendant may have undertaken

---

[5] Defendant, in its brief, has conceded that:

"In the event the Court cannot conclude as a matter of law whether the obligation to repair the heating system rested on the plaintiff or the defendant, a new trial should be held of all issues in the case."

[ 8 ]

negotiations for sale of the nursing home to Mr. Cleveland; that Mr. Metz at the beginning of negotiations told Mr. Cleveland that the lease had been ended, and that after the breakdown and repairs by defendant the sale was consummated and that Mr. Metz later sued Mr. Cleveland for an alleged agreement to pay for the heating system. Based on this evidence plaintiff contends that the jury could have found a calculated plan by defendant to dispossess plaintiff so that the building could be sold to Mr. Cleveland and seized this opportunity when the heating system broke down to deliberately evade his obligation to make repairs until plaintiff experienced financial difficulties and was forced to move out.

It appears from the record, however, that the first difficulty with the heating system occurred on May 4, 1972, and that Mr. Cleveland could not recall whether the negotiations for his purchase of the nursing home started in the month of May "or before." Of more importance, it does not necessarily follow that a landlord who sells a building occupied by a tenant must first end the tenancy. On the contrary, the sale of leased property is normally subject to the lease. Indeed, the lease in question provides that its provisions (which would include its five-year term) "shall inure to the benefit of, and shall be binding on, not only Landlord and Tenant, respectively, but, also their respective successors and assigns * * *."

In short, the evidence was insufficient to support a finding that defendant acted in bad faith, much less that there was a "calculated plan by Metz to dispossess Stafford so he could sell the building to Cleveland" and that he "deliberately evade(d) his obligation [to repair the heating system] until Stafford went broke, and had to move out" as contended by plaintiff.

For the reasons previously stated, however, the judgment of the trial court must be reversed and the case remanded for a new trial.

Reversed and remanded.