Argued and submitted October 11, 1982, affirmed April 27, reconsideration denied
June 10, petition for review denied July 6, 1983 (295 Or 297)

# HAAS,
*Appellant,*
*v.*
# PAINTER et al,
*Respondents.*

(A8011-06216; CA A24559)

662 P2d 768

Gerald R. Pullen, Portland, argued the cause and filed
the brief for appellant.

Michael G. Holmes, Portland, argued the cause for respondents. With him on the brief were Richard S. Pope, and Spears, Lubersky, Campbell & Bledsoe, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff, a former Multnomah County District Attorney and the 1980 Democratic candidate for Attorney General, brought this action to recover damages to his reputation caused by an editorial published by defendants, which he contends was defamatory. He appeals from a judgment dismissing his complaint after defendants' motion for summary judgment[1] was granted on the ground that the editorial was not "capable of being defamatory as statements of fact."

The editorial was written by defendant Painter and published on the editorial page of The Oregonian on September 18, 1980, seven weeks before the November general election. It concerned a local juvenile case of some notoriety in which Michelle Gates, a 14-year-old girl, had been accused of killing a small child. Prior to publication of the editorial, a circuit judge had ruled that statements made by Gates to police would not be admissible at trial,

---

[1] Plaintiff's notice of appeal, filed May 5, 1982, states that he appeals from "the judgment order entered * * * on April 7, 1982." He attached to his notice a document captioned "Order Granting Motion for Summary Judgement," but which concluded:

"Now, therefore, the Court does hereby

"ORDER that the defendants' motion for summary judgment is granted; and further

"ORDER that the defendants' are entitled to judgment dismissing this action in its entirety with prejudice and

"1 judgment for recover by the defendants of their costs and

"2 disbursements in this action."

Plaintiff designated the entire trial court file, which included the actual judgment also entered on April 7.

On June 2, the Supreme Court decided *Ensley v. Fitzwater*, 293 Or 158, 645 P2d 1062 (1982). In that case, the notice of appeal stated that appeal was taken from "the order granting defendant's motion for summary judgment" and stated that the "judgment order" was attached; the actual judgment was attached. The court pointed out that an appeal cannot be taken from an *order* granting the motion and that the term "judgment order" has no meaning, but it allowed the appeal because it and the adverse party could easily determine that the judgment necessary to the court's jurisdiction had been entered and that the appeal was taken from that judgment.

Plaintiff here also failed to understand that "judgment order" is a meaningless term and therefore attached the wrong document. As in *Ensley*, however, it can easily be determined that the judgment necessary to our jurisdiction is present and that the appeal is taken from that judgment.

because she had not been advised of her *Miranda* rights before she was questioned, and another circuit judge thereafter dismissed the delinquency petition, because prosecutors had not acted on it within the time required by court rule.[2]

The editorial criticized the manner in which the police and prosecutors handled the case, and read as follows:

### "GATES TRAGEDY

"One of the tragedies in the Michelle Gates case is that important participants in the juvenile justice system failed to follow reasonably clear-cut procedural rules, thereby damaging her civil rights and short-circuiting society's self-protective interests.

"The incredible lapses, in what is supposed to be an enlightened system for handling juvenile delinquency matters, mandate a thorough examination of the system and the flaws that were so illuminated in the Gates case.

"The case was fatally flawed from the outset when police questioned the 14-year-old in connection with the January drowning death of 4-year-old Ruth Anne Neil. Juveniles, like adults, have constitutional rights, but the police failed to observe these by failing to warn her of the right to remain silent, the right to an attorney and so on — the Miranda warnings given to adults as a matter of course.

"That might not have occurred if the police and prosecutors had been in closer contact. But a policy set by District Attorney Harl Haas discourages such contact. Prosecutors have been told they should review cases only after the police investigation is complete.

"By that time, the police had made the critical lapse that later undermined the entire case against her. A judge ordered her incriminating comments suppressed. Later comments she made to other girls being held at the Donald E. Long Home detention facility also were suppressed as being 'fruits of the poisonous tree.' Her attorneys, Forrest 'Joe' Rieke and Larry Olstad, successfully argued that the statements could not be used against her in a delinquency hearing because she would not have made them had she not been held in the facility.

---

[2] On appeal, the petition was reinstated. *State ex rel Juv. Dept. v. Gates*, 56 Or App 694, 642 P2d 1200, *rev den* 293 Or 394 (1982).

"While prosecutors were struggling on that constitutional front, they overlooked an important court rule which requires a delinquency petition to be dismissed if timely action is not taken. The rule is so firm that dismissal is automatic. No one even has to request it. For Miss Gates the 30 days expired last February 12. Since then she has been held illegally.

"That need not have occurred. Delays in juvenile hearings can be granted provided the reasons are presented to the court in writing and are found acceptable. That never occurred.

"As a result of such oversights, Multnomah County Circuit Judge George Van Hoomissen had no choice but to declare invalid the juvenile court petition accusing her of the child's death.

"The case must have some impact on the system. District attorneys and juvenile court officials should tighten up the operation, routinely applying the procedural rules to all juveniles.

"Police should undergo retraining to refresh them on the Miranda rights and should learn how to inform a juvenile of crucial rights in an understandable fashion."

Plaintiff alleged that the third and fourth paragraphs of the editorial were false and that defendants knew that they were false but published the editorial deliberately to defame him and to injure and destroy his professional reputation. He sought damages of $500,000. Defendants asserted, as affirmative defenses, that they had thought that the editorial was true, that it involved fair and permissible expressions of opinion and that publication of the editorial was constitutionally protected. In granting defendants' motion for summary judgment, the trial court relied on the pleadings and a deposition of plaintiff and stated correctly that the only issue was whether the editorial, standing alone, was "capable of being defamatory as statements of fact" or was a protected expression of opinion.

■    Whether a communication is capable of a defamatory meaning is a question for the court; the jury determines whether a communication capable of a defamatory meaning was so understood by the recipient. *Beecher v. Montgomery Ward & Co.*, 267 Or 496, 500, 517 P2d 667

(1973). The starting point, however, in analyzing any claim brought by a public official against critics of his official conduct is recognition of the constitutional and common-law safeguards afforded the defendants and the policy underlying them.

Perhaps no principle is more fundamental to our political system than that citizens have an unrestricted right to criticize their government and its operation, which includes the right to criticize government officials. *New York Times Co. v. Sullivan,* 376 US 254, 269-73, 84 S Ct 710, 11 L Ed 2d 686 (1964). For that reason, it has been held that even the most vituperative criticism of public officials is protected under the doctrine of fair comment and criticism so long as it is in the form of an opinion. *Desert Sun Publishing Co. v. Superior Court,* 97 Cal App 3d 49, 158 Cal Rptr 519 (Ct App 1979); Prosser, Torts 819-20, § 118 (4th ed 1971). False statements of fact do not serve the underlying purposes of the First Amendment, however. Nevertheless, robust and uninhibited discussion of public issues is so essential to our political health that a public official may not recover damages, even for a false defamatory statement of fact relating to his official conduct unless he proves that the statement was made with knowledge that it was false or that it was made with reckless disregard of whether it was false or not, because otherwise

> "* * * would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. * * *" *New York Times Co. v. Sullivan, supra,* 376 US at 279.

As additional means of furthering this important interest, courts have gone to considerable lengths to characterize what appear to be statements of fact as statements of opinion[3] when made in the course of disputing matters of

---

[3] Under the Corrupt Practices Act, ORS ch 260, the court has held that a statement concerning a political candidate, as plaintiff was· here, is not false if by any reasonable inference it may be considered as opinion or as a true factual statement. *See Thornton v. Johnson,* 253 Or 342, 362, 453 P2d 178, 454 P2d 647 (1969). Further, the opinion expressed or reasonably inferred need not be well-founded. Although we are unaware of any defamation cases taking that approach, it may be the appropriate one where the person claiming to have been defamed is a

public interest. *King v. Menolascino,* 276 Or 501, 555 P2d 442 (1976); *Desert Sun Publishing Co. v. Superior Court, supra.* In *King,* the court held that the words alleged to be defamatory must be read in the context in which they were written — in that case, in response to the plaintiff's letter to the editor on a controversial subject. The defendant had made some statements of fact which, if true, made plaintiff's statements false and tended to make her appear to be a supporter of unworthy causes. However, the court viewed the letter as a whole and in the context of the highly controversial subject matter to which it related. As so viewed, the court held that the defendant's statements were not capable of a defamatory meaning.

■    We think the general approach taken in *King* is applicable here. The writing was an editorial, generally understood to be opinion. The thrust of the editorial as a whole was not an attack on plaintiff but an impersonal criticism of the handling by the police and the district attorney's office of a serious juvenile case. The editorial pointed out two ways in which the case was mishandled: (1) the police failed to advise the juvenile of her *Miranda* rights, resulting in the suppression of her statements; (2) the district attorney's office thereafter failed to take timely action to proceed with the petition, resulting in its dismissal. That much of the editorial is clearly protected speech. Although plaintiff contends that the third paragraph is false and defamatory, he conceded in his deposition that in his *opinion* the case was not "fatally flawed from the outset" for failure to advise Gates of her constitutional rights. He recognized that it had been judicially determined that that failure required suppression of Gates' statements. That paragraph is clearly an expression of opinion.

■    Plaintiff's principal focus is on the fourth paragraph, which states:

> "That might not have occurred if the police and prosecutors had been in closer contact. But a policy set by District Attorney Harl Haas discourages such contact. Prosecutors have been told they should review cases only after the police investigation is complete."

political candidate at the time of publication. *But see Comm. to Retain Judge Tanzer v. Lee,* 270 Or 215, 527 P2d 247 (1974), dissenting opinion of O'Connell, C. J.

He contends that those statements may be reasonably construed by a reader to mean that he, the district attorney, had a policy of telling the police that they could not call his office and get advice until they had completed their investigation. Given that meaning, he contends, the statements characterize him as incompetent, stupid and guilty of legal malpractice.

We do not understand the language used to be reasonably susceptible to that meaning. We read that paragraph as expressing the opinion that the police might not have failed to advise Gates properly of her rights if the police and prosecutors had been in closer contact, which might have occurred if plaintiff had not told prosecutors that they "should review cases only after the police investigation is complete." Although we question the reasoning employed by defendants in that paragraph and think that it may have criticized plaintiff unfairly for a police error, it is not reasonably susceptible of the meaning plaintiff contends for it.

As evidence that the language of the fourth paragraph could reasonably be understood to mean what he contends, plaintiff, in his deposition, pointed out that his opponent in the race of attorney general stated that plaintiff's administration of his office as district attorney would, based on the editorial in question, constitute legal malpractice. However, that suggestion most reasonably relates to the ultimate dismissal of the petition in the Gates case, not to the failure of the police to give Gates the proper advice of rights.

Unlike the statements made in *Cushman v. L. B. Day,* 43 Or App 123, 602 P2d 327 (1979), *rev den* 288 Or 571 (1980), the language used here does not rely on "knowledge of specific but unarticulated facts." The paragraph in question articulated, we assume falsely, plaintiff's policy of not reviewing cases until after the police investigation was complete. Although, as indicated above, we fail to see a rational connection between that policy and the failure of the police properly to advise Gates, or that the policy formed a basis for the opinion that paragraph expresses, it is not for the courts to pass on the validity of, or the basis for, an editorial opinion.

The editorial as a whole was a protected expression of opinion on an important controversial failure of the juvenile system. It was critical of the police as well as the district attorney's office. It is not, either as a whole or as dissected by plaintiff, reasonably capable of being understood to mean that plaintiff's policy as district attorney was not to permit his deputies to answer questions from the police until the police investigation was complete. Accordingly, the editorial was not capable of a defamatory meaning.

Affirmed.