Argued and submitted June 15, reversed and remanded December 7, 1983, reconsideration denied February 24, petition for review denied April 3, 1984 (296 Or 712)

KOCH,
*Appellant,*

*v.*

LABORICO et al,
*Respondents.*

(A8001-00280; CA A26735)

674 P2d 602

J. Phillip Holcomb, Portland, argued the cause and filed the brief for appellant.

Thomas O. Carter, Portland, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a defamation action. Plaintiff appeals from summary judgment for defendants.[1] He contends that the trial court erred in finding (1) that he was a "public official" under the rule in *New York Times Co. v. Sullivan,* 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964), (2) that there was no basis on which the issue of *actual* malice could be submitted to a jury and (3) that defendant Laborico's allegedly libelous communication was conditionally privileged.

We agree with the trial court that plaintiff was a "public official" under the *New York Times* rule. We conclude, however, that the court erred in entering summary judgment for defendants. The record contains evidence on which the issues of actual malice and the loss of any conditional privilege could be submitted to a trier of fact. Accordingly, we reverse and remand.

Plaintiff, a police sergeant, was the day-shift operational supervisor of dispatchers at the Portland-Multnomah County Bureau of Emergency Communications (BOEC). Defendant Laborico was a shop steward for City Employees Local Union No. 189 that represented BOEC's civilian dispatchers. She filed a grievance petition with plaintiff's supervisor, charging, in effect, that plaintiff was emotionally and mentally unstable, a threat and danger to others and professionally incompetent. She signed the petition "in behalf of all" of BOEC's civilian dispatchers. The petition stated that "all civilian employees at BOEC were "involved" in the grievance and that "all employees at BOEC [were] witnesses" to her allegations about plaintiff.[2]

---

[1] Defendants Laborico and City Employees Local Union No. 189 were granted summary judgment. Local Union No. 189 is affiliated with defendant American Federation of State, County and Municipal Employees (AFSCME), which was granted summary judgment in a separate order. Plaintiff does not appeal from that separate order. The parties have not raised any issue under the Oregon Constitution.

[2] Plaintiff's complaint states in relevant part:

"On or about May 21, 1979, defendant Laborico placed, or caused to be placed on a bulletin board in the office of the Bureau of Emergency Communications, an agency of the City of Portland, the following message, in part:

'The (employees) on day shift have been severely intimidated by Sgt. Koch, to the point they are afraid he is capable of violence toward them. Sgt. Koch carries a gun at all times, as we realize most officers do. However, many (employees) have expressed the opinion that they would be extremely

BOEC's acting director refused to accept Laborico's grievance petition, stating that "the grievance procedure is not an appropriate vehicle for discussing the issues which you have raised." Because of the gravity of the charges made by Laborico, however, the acting director responded "for the record," stating, *inter alia,* that some of Laborico's charges were "totally unsupported by fact," that "no one has presented one scintilla of evidence to justify this accusation

---

hesitant to go into the Sergeant's office with him alone for any potentially stressful discussion as long as he is wearing his gun. It is felt that Sgt. Koch's apparent lack of self control might lead him to actual physical abuse during a pressure situation.

'It would appear that management is also aware of a potential problem with Sgt. Koch's self control. * * * I truly believe, and I am not alone, that Sgt. Koch's continued employment at the Bureau represents a threat to the safety of all (employees). Management is forewarned that they will be held responsible for the physical safety of all (employees) while they are on duty.

'Since Sgt. Koch's arrival on the day shift, he has shown many instances of not being aware of Bureau policies, even though he had been working at the Center for six months prior to his arrival on the day shift. There are also documented instances of his lack of knowledge regarding his own Police Bureau policies.'

"VII

"The above-described message was placed on the bulletin board so it could be observed by employees of the Bureau of Emergency Communications, was sent to the management of the Bureau of Emergency Communications, and it has been observed by diverse persons.

"VII

"The message imputes that plaintiff is unfit to effectively perform the duties of his employment, that plaintiff has such a lack of self control that he might cause physical abuse, that plaintiff would resort to the use of his police firearm during a stressful situation, that the Bureau of Emergency Communcation management is aware of these "problems", and that this feeling (plaintiff's lack of self control, etc.) is shared by all of defendant Laborico's fellow employees at the Bureau of Emergency Communication.

"VIII

"The message was published of and concerning plaintiff.

"IX

"The message was false, and it is published maliciously and wrongfully by the defendant"

Although it is not clear from the record, we assume that the "message" defendant Laborico allegedly placed or caused to be placed on the BOEC bulletin board was a copy of the grievance petition that she admittedly filed with plaintiff's supervisor.

against Sgt. Koch," that Laborico's accusations were "unsubstantiated and irresponsible," that she had "grossly exaggerated a series of events of which [she knew] absolutely nothing" and that he suspected she was using the grievance procedure improperly "for venting anti-management attitudes or carrying [on] personal vendettas."

In granting summary judgments, the trial court found:

"'* * * [Sergeant Koch] should be considered a public official. Even giving him the benefit of all reasonable inferences which might be taken from the record, there would be no basis upon which the issue of actual malice could be given to a jury. Moreover, there is no evidence to controvert the facts that Ms. Laborico's communication was made in good faith and was published in a sufficiently limited way as · to entitle it to a conditional privilege."

In *New York Times Co. v. Sullivan, supra,* the Supreme Court held that, in an action brought by a "public official" for criticism of his official conduct, the Constitution prohibits an award of damages for a false statement unless it was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false.[3]

In *Haas v. Painter,* 62 Or App 719, 724, 662 P2d 768 (1983), we explained:

"Perhaps no principle is more fundamental to our political system than that citizens have an unrestricted right to criticize their government and its operation, which includes the right to criticize government officials. *New York Times Co. v. Sullivan,* 376 US 254, 269-73, 84 S Ct 710, 11 L Ed 2d 686 (1964). For that reason, it has been held that even the most vituperative criticism of public officials is protected under the doctrine of fair comment and criticism so long as it is in the form of an opinion. *Desert Sun Publishing Co. v. Superior Court,* 97 Cal App 3d 49, 158 Cal Rptr 519 (Ct App 1979); Prosser, Torts 819-20 § 118 (4th ed 1971). False statements of

---

[3] The "reckless disregard" part of the actual malice test is a subjective rather than an objective standard. Reckless conduct is not measured by whether a reasonably prudent person would have published or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained "serious doubts" as to the truth of the publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice. *St. Amant v. Thompson,* 390 US 727, 731, 88 S Ct 1323, 20 L Ed 2d 262 (1968).

fact do not serve the underlying purposes of the First Amendment, however. Nevertheless, robust and uninhibited discussion of public issues is so essential to our political health that a public official may not recover damages, even for a false defamatory statement of fact relating to his official conduct unless he proves that the statement was made with knowledge that it was false or that it was made with reckless disregard of whether it was false or not, because otherwise

> " '* * * would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. * * *' *New York Times Co. v. Sullivan, supra,* 376 US at 279."

Plaintiff first contends that we should find defendants may not invoke the *New York Times* rule and that the trial court's consideration of the "public official" question was unnecessary. He relies on a footnote in *Hutchinson v. Proxmire,* 443 US 111, 133 n 16, 99 S Ct 2675, 61 L Ed 2d 411 (1979):

> "Neither the District Court nor the Court of Appeals considered whether the *New York Times* standard can apply to an individual defendant rather than to a media defendant. At oral argument, counsel for Hutchinson stated that he had not conceded that the *New York Times* standard applied. * * * This Court has never decided the question; our conclusion that Hutchinson is not a public figure makes it unnecessary to do so in this case."

We reject plaintiff's contention. In *Wheeler v. Green,* 286 Or 99, 110-11, 593 P2d 777 (1979), the Supreme Court held:

> "* * * [A]ll defendants, not only those associated with the media, continue to be protected by the *New York Times* rule in cases involving comment upon public officials * * *."

Plaintiff next contends that the trial court erred in concluding that he is a "public official." When, as here, the facts are not in dispute, the question whether one is a "public official" is for the court. *Rosenblatt v. Baer,* 383 US 75, 88, 86 S Ct 669, 15 L Ed 2d 597 (1966); *Wheeler v. Green, supra,* 286 Or at 111 n 7. BOEC is the police communications nerve center for both the Portland Bureau of Police and the Multnomah County Department of Public Safety (Sheriff). All police communications, routine and emergency, are routed through

the BOEC. Plaintiff, a police sergeant, was the day shift operational supervisor of dispatchers at BOEC. He had little or no direct contact with the public, and the facility was closed to the public.

In *Rosenblatt v. Baer, supra,* 383 US at 85, the Supreme Court stated:

"We remarked in *New York Times* that we had no occasion to determine how far down into the lower ranks of government employees the public official designation would extend for purposes of [the *New York Times*] rule, or otherwise to specify categories of persons who would or would not be included. 376 US at 283. * * * The motivating force for the decision in *New York Times* was twofold. We expressed a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, *and* that [such debate] may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. 376 US at 270. (Emphasis supplied.) There is, first, a strong interest in debate on public issues, and, second, a strong interest in debate about those persons who are in a position significantly to influence the resolution of those issues. Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the public official designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.

"* * * Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, both elements we identified in *New York Times* are present and the *New York Times* malice standards apply." (Footnotes omitted.)

A footnote explained:

"It is suggested that this test might apply to a night watchman accused of stealing state secrets. But a conclusion that the *New York Times* malice standards apply could not be reached merely because a statement defamatory of some person in government employ catches the public's interest; that conclusion would virtually disregard society's interest in

protecting reputation. The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." 383 US at 86 n 13.

We conclude that plaintiff is a "public official" within the meaning of *New York Times.* As the day shift operational supervisor of dispatchers at the BOEC Sergeant Koch possesses "substantial responsibility for * * * [and] control over the conduct of governmental affairs." *Rosenblatt v. Baer, supra,* 383 US at 85. Because of the importance of his position, the public has an independent interest in his qualifications and performance beyond the general public interest in the qualifications and performance of all police officers. *Rosenblatt v. Baer, supra,* 383 US at 86. His position as day-shift operational supervisor of BOEC dispatchers is one "which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Rosenblatt v. Baer, supra,* 383 US at 87 n 13. The trial court correctly concluded that, as a matter of law, plaintiff is a "public official" within the *New York Times* rule.[4]

Plaintiff next contends that the trial court erred in finding that there was no basis on which the issue of actual malice could be given to a jury. The propriety of summary judgment as a vehicle for disposition of defamation actions governed by the actual malice standard has been the subject of

---

[4] *See Time v. Pape,* 401 US 279, 91 S Ct 633, 28 L Ed 2d 45 (1971); *Meiners v. Moriarity,* 563 F2d 343, 351 (7th Cir 1977); *Rosales v. City of Eloy,* 122 Ariz 134, 593 P2d 688 (1979); *Moriarty v. Lippe,* 162 Conn 371, 294 A2d 326 (1972); *Jackson v. Filliben,* 281 A2d 604, 605 (Del 1971); *Coursey v. Greater Niles Township Publishing Corp.,* 40 Ill 2d 257, 239 NE 2d 837, 841 (1968); *Suchomel v. Suburban Life Newspapers, Inc.,* 40 Ill 2d 32, 240 NE 2d 1 (1968); *Rawlins v. Hutchinson Publishing Company,* 218 Kan 295, 543 P2d 988, 992 (1975); *N.A.A.C.P. v. Moody,* 350 So 2d 1365, 1369 (Miss 1977); *Ramacciotti v. Zinn,* 550 SW2d 217 (Mo App 1977); *La Rocca v. New York News, Inc.,* 156 NJ Super 59, 383 A2d 451, 453 (1978); *Orr v. Lynch,* 60 App Div 2d 949, 401 NYS 2d 897, 899 (1978); *aff'd* 45 NY 2d 903, 411 NYS 2d 10 (1978); *Malerba v. Newsday, Inc.,* 64 App Div 2d 623, 406 NYS 2d 552, 554 (1978); *Dunlap v. Philadelphia Newspapers, Inc.,* 301 Pa Super 475, 448 A2d 6 (1982); *Colombo v. Times-Argus Ass'n, Inc.,* 135 Vt 454, 380 NE 2d 80, 83 (1977); *Starr v. Beckley Newspapers Corporation,* 157 W Va 447, 201 SE 2d 911 (1974); See also Annot., 19 ALR 3d 1361, 1375 (1968); *but see Hutchinson v. Proxmire, supra,* 443 US at 119 n 8 (the category of "public official" cannot be thought to include *all* public employees); *McCusker v. Valley News,* 121 N.H. 258, 428 A2d 493 (1981), *cert den* 454 US 1017 (1983) (deputy sheriff not public official as a matter of law.)

much debate. Some courts have held that summary judgment should be granted liberally in *New York Times*-type cases to avoid the "chilling effect" that the mere pendency of such cases has on First Amendment rights. Other courts have held that, because actual malice refers to the defendant's mental state with respect to the truthfulness of the allegedly defamatory material, proof of such a mental state must usually be inferred from circumstances difficult to develop on summary judgment.

The subjective nature of the evidence a plaintiff must rely on in an action governed by the actual malice standard was recognized in *Herbert v. Lando,* 441 US 153, 165, 99 S Ct 1635, 60 L Ed 2d 115 (1979), where the Supreme Court held that any evidence relevant to the defendant's state of mind could be used to show actual malice. In *Hutchinson v. Proxmire, supra,* 443 US at 120 n 9, the Supreme Court expressly cast doubt on the wisdom of liberal summary judgment in actual malice cases:

> "Considering the nuances of the issues raised here, we are constrained to express some doubt about the so called 'rule.' The proof of 'actual malice' calls a defendant's state of mind into question * * * and does not readily lend itself to summary disposition. *See* 10 C. Wright & A. Miller, Federal Practice and Procedure §2730, pp 590-592 (1973). *Cf.* Herbert v. Lando, 441 US 153 (1979)."

Although the propriety of summary judgment in *New York Times*-type cases was not directly before the Court in *Hutchinson,* other federal courts have since denied summary judgment in such cases. *See, e.g., Clark v. American Broadcasting Companies, Inc.,* 684 F2d 1208 (6th Cir 1982), *cert den* 460 US 1040, (1983); *Schultz v. Newsweek, Inc.,* 668 F2d 911 (6th Cir 1982); *Rebozo v. Washington Post Co.,* 637 F2d 375 (5th Cir 1981); *Yiamouyiannis v. Consumers Union,* 619 F2d 932 (2d Cir 1980); *Guam Fed. of Teachers, Local 1581 v. Ysrael,* 492 F2d 438, 441-43 (9th Cir 1974); *Nader v. de Toledano,* 408 A2d 31 (DC Ct App 1979); *see also The Use of Summary Judgment In Defamation Cases,* 14 USF L Rev 77, 84 (1980).

■ The standard of review in defamation cases governed by the actual malice standard is the same as in any other summary judgment: i.e., whether the summary judgment record demonstrates that there is a genuine issue of fact

which, if proven, would support a verdict for the opposing party. To support a verdict in a *New York Times*-type case, a trier of fact must be able to find malice by clear and convincing evidence. *Gertz v. Welch,* 418 US 323, 342, 94 S Ct 2997, 41 L Ed 2d 789 (1974). The question on summary judgment, therefore, is whether a trier of fact could find malice, not whether the trial court is convinced of the existence of malice. The trial court must examine the evidence, making all permissible inferences and resolving questions of credibility in favor of the party opposing summary judgment. *Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or 651, 655, 576 P2d 356 (1978); *see Nader v. de Toledano, supra,* 408 A2d at 50.

In her deposition, Laborico stated that not all of the civilian employes at BOEC had contacted her about plaintiff, that not all of them shared her views about plaintiff and that she was sure some employes did *not* agree with her. She acknowledged that she had sent a copy of the grievance petition to a city commissioner "as a courtesy" with knowledge that that act violated the grievance procedure in her union's contract with the city. She also stated that she had not appealed the denial of her grievance by plaintiff's supervisor to a higher authority pursuant to her union's contract.[5] Although her grievance states that it involved *all* civilian employes at BOEC, she admited that she did not contact every employe to determine if each wanted a grievance filed against plaintiff. Although her grievance states that *all* employes at BOEC were *witnesses* to it, she could not recall how many employes she had contacted before filing the petition, which employes had brought plaintiff's alleged problems to her attention or the details of the incidents she reported. She also stated in the petition that several employes believed that plaintiff's acting supervisor had commented *seriously,* after hearing a loud bang, "My God, I thought Koch shot someone." However, one such employe, identified by Laborico, stated in his affidavit that he took the supervisor's statement as a *joke* and that everyone in the vicinity *laughed* when the comment was made. On the basis of that evidence, we conclude that a jury could reasonably find that Laborico acted with either actual knowledge of the falsity of her statements or with

---

[5] Laborico's affidavit states that plaintiff was later promoted to the rank of Lieutenant.

reckless disregard as to their falsity. *See Wheeler v. Green, supra,* 286 Or at 111.

■      Defendants argue that, even if a genuine issue of fact exists on the question of actual malice, Laborico's statements were conditionally privileged.[6] In *Cribbs v. Montgomery Ward & Co.,* 202 Or 8, 13, 272 P2d 978 (1954), the Supreme Court quoted with approval the following statement of the rule of qualified privilege from *Harrison v. Bush,* 5 E & B 348, 25 LJQB 29:

> " 'A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminating matter, which, without this privilege, would be slanderous and actionable, and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation.' "

A qualified privilege may be lost, however, if abused. *Wheeler v. Green, supra,* 286 Or at 104. A person abuses a qualified privilege if that person publishes defamatory matter without reasonable grounds for belief in its truth. *Schafroth v. Baker,* 276 Or 39, 45, 553 P2d 1046 (1976); *Benassi v. Georgia-Pacific,* 62 Or App 698, 703, 662 P2d 760, *modified* 63 Or App 672, 667 P2d 532 (1983); Restatement (Second) of Torts § 601 (1977).

■      Plaintiff offered sufficient evidence to defeat summary judgment on the issue of actual malice. It necessarily follows that he offered sufficient evidence to defeat summary judgment on the issue of the loss of any conditional privilege.[7]

Reversed and remanded.

---

[6] The difference between absolute and conditional or qualified privilege is discussed in *Adamson v. Bonesteele,* 295 Or 815, 671 P2d 693 (1983).

[7] A qualified privilege may not even exist in a defamation case that is subject to the actual malice standard. *See* Restatement (Second) of Torts §599-600 (1977); *see also Wright v. Haas,* 586 P2d 1093, 1097 (Okla 1978); *Ryder Truck Rentals v. Latham,* 593 SW 2d 334, 339-40 (Tex Civ App 1979); *Mark v. Seattle Times,* 96 Wash 2d 473, 635 P2d 1081, 1091 n 5 (1981); *Moore v. Smith,* 89 Wash 2d 932, 578 P2d 26, 30 n 1 (1978); *Sewell v. Brookbank,* 119 Ariz 422, 581 P2d 267, 270-71 (Ariz App 1978).