Argued and submitted February 25, 1983, affirmed July 11, reconsideration denied August 24, petition for review denied September 18, 1984 (297 Or 824), U.S. certiorari denied February 19, 1985

# McNABB,
*Appellant,*

*v.*

# OREGONIAN PUBLISHING CO.,
*Respondent.*

## (A8107-04235; CA A24962)

685 P2d 458

Will Aitchison, Portland, argued the cause for appellant. With him on the brief was Aitchison & Sherwood, P. C., Portland.

David H. Wilson, Jr., Portland, argued the cause for respondent. With him on the brief were Michael G. Holmes and Spears, Lubersky, Campbell & Bledsoe, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff, a Portland police officer, brought this action to recover for damage to his reputation caused by an allegedly libelous newspaper article that was published by defendant. The trial court entered summary judgment for defendant, and this appeal followed.

The alleged libel, published on May 31, 1981, was one of a series of articles that examined the workings of the Portland Police Bureau. The article includes quotations that portray plaintiff as a racist. It is prefaced by a summary statement that plaintiff is reputed to be a racial bigot inclined to using excessive force against blacks. It then reports a meeting between plaintiff, Portland City Commissioner Jordan and Portland Police Chief Baker, in which plaintiff was allegedly told by Commissioner Jordan that he was rumored to be "heavy handed" in his work in the North Precinct and that he used "racially demeaning" language. It attributes to an unidentified "white Portland attorney" a statement that plaintiff was an "unreconstructed, unreformable racist." A black former policeman, described as "Multnomah County's affirmative action director," is quoted as saying that plaintiff had a reputation for "using more than necessary force to arrest people, especially people of color and that he had a history of abusive and racist language, calling blacks names like 'nigger,' 'coon,' 'boy,' or 'puke.'" It attributes to an unidentified "black official of a civil rights organization" a statement that plaintiff was "bad news, straight out of the Old West." The article also contains plaintiff's denials and favorable comments about plaintiff made by his superiors at the Portland Police Bureau.

Plaintiff brought this action, asserting two claims against defendant as a result of the article: first, that the article was libelous and, second, that it intentionally held plaintiff up to the public eye in a false light. Defendant moved to dismiss both claims. The trial court denied the motion to dismiss the libel claim and allowed the motion to dismiss the "false light" claim. Plaintiff's action then proceeded solely in libel.

While the case was pending, plaintiff sought discovery of certain notes taken by the reporter who wrote the article and a variety of material gathered by defendant about plaintiff

which was not included in the final draft of the article. The trial court, relying on Oregon's "shield law," ORS 44.510 to 44.530, held that the material was not discoverable.

Defendant then moved for summary judgment on the libel claim. In support of that motion it argued, in part, that: (1) plaintiff is a "public official" under *New York Times v. Sullivan*, 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964), and, therefore, is required to show that defendant had acted with actual malice, *i.e.*, that it had intentionally or recklessly published defamatory falsehoods concerning plaintiff; and (2) defendant had not, in fact, acted knowingly or recklessly. Plaintiff responded to defendant's motion by submitting affidavits and excerpts from depositions of defendant's sources for the article. He did not concede that he was a "public official" within the purview of the *New York Times* rule; however, his principal contention is that the facts warranted submission of the case to a jury even under the *New York Times* standard.

The trial court granted summary judgment, concluding, in part, that plaintiff is a "public official" and had not shown any evidence from which a jury could conclude that defendant had acted with actual malice.

Plaintiff assigns three errors on appeal. First, he contends that the trial court erred by granting summary judgment. Second, he contends that the trial court erred in dismissing his "false light in the public eye" claim. Finally, he contends that the trial court erred in failing to require defendant either to produce material that plaintiff requested during discovery or to abandon the claim that it was entitled to the protection of the *New York Times* rule.

■    As a preliminary matter, we agree with the trial court that, as a police officer, plaintiff is a public official.[1] The nature and importance of the subject matter of the allegedly defamatory article published by defendant demonstrate that

---

[1] Plaintiff does not strenuously contest this holding. In his brief he states:

"Plaintiff has not conceded that he is a 'public official' as that term is defined in *Times*. Plaintiff does acknowledge, however, that the vast majority of cases which have considered the issue have found even rank and file police officers to be public officials. *Accordingly, in these proceedings, Plaintiff will not stress the argument that he is not a public official.*" (Emphasis supplied.)

plaintiff's duties are governmental in character and that there is significant public interest in the manner in which those duties are discharged. *See Koch v. Laborico,* 66 Or App 78, 674 P2d 602 (1983), *rev den* 296 Or 712 (1984); *Coursey v. Greater Niles Township Pub. Corp.,* 40 Ill 2d 257, 264-65, 239 NE2d 837 (1968); *Rawlins v. Hutchinson Publishing Co.,* 218 Kan 295, 299, 543 P2d 988 (1975); *Malerba v. Newsday, Inc.,* 64 App Div 2d 623, 624, 406 NYS2d 552 (1978).

■ The question in the present case is whether, based on the affidavits and depositions in the record, allowing all permissible inferences and resolving questions of credibility in plaintiff's favor, a reasonable jury could find actual malice. *See Yartzoff v. Democrat-Herald Pub. Co.,* 281 Or 651, 655, 576 P2d 356 (1978); *Koch v. Laborico, supra,* 66 Or App at 86. Malice may be established by evidence that a statement was published "with knowledge that it was false or with reckless disregard of whether it was false or not," *New York Times v. Sullivan, supra,* 376 US at 279-80, or "with [a] high degree of awareness of [its] probable falsity," *Garrison v. Louisiana,* 379 US 64, 74, 85 S Ct 209, 13 L Ed 2d 125 (1964), or when "the defendant in fact entertained serious doubts as to the truth of [its] publication." *St. Amant v. Thompson,* 390 US 727, 731, 88 S Ct 1323, 20 L Ed 2d 262 (1968).

■ A public official who claims to have been libeled must prove the existence of actual malice by "clear and convincing proof." *Gertz v. Welch,* 418 US 323, 342, 94 S Ct 2997, 41 L Ed 2d 789 (1974). Actual malice is not presumed, *New York Times v. Sullivan, supra,* 376 US at 284. Neither may it be inferred from the fact of defamatory publication alone, *Nader v. de Toledano,* 408 A2d 31, 41 (DC 1979), *cert den* 448 US 1078 (1980), or from the mere fact that the accusations are of a serious nature. *Washington Post Company v. Keogh,* 365 F2d 965, 970 (DC Cir 1966), *cert den* 385 US 1011 (1967).

■ Furthermore, plaintiffs' allegations in actions for libel that defendants "rel[ied] on statements made by a single source," *New York Times Company v. Connor,* 365 F2d 567, 576 (5th Cir 1966), or failed to verify statements received from an "adequate news source," *Post v. Oregonian Publishing Co.,* 268 Or 214, 224, 519 P2d 1258 (1974), or performed "slipshod investigation," *Colombo v. Times-Argus Assoc.,* 135 Vt 454,

458, 380 A2d 80 (1977), have all been rejected as bases for inferring actual malice. In short, reckless conduct amounting to actual malice "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson, supra,* 390 US at 731. Rather, " 'knowledge' or 'reckless disregard' is a subjective matter, a question of state of mind, quite distinct from any question of objective reasonableness or prudence." *Nat. Ass'n., Etc. v. Central Broadcasting,* 379 Mass 220, 231, 396 NE2d 996, (1979), *cert den* 446 US 935 (1980).

Plaintiff's contention that the trial court erred in granting summary judgment is grounded primarily on the argument that the serious nature of the charges alleged demanded, but defendant failed to conduct, a thorough investigation as to their accuracy. In support, plaintiff asserts: (1) defendant failed to obtain first-hand information about plaintiff; (2) the absence of "hot news" demanded a more thorough investigation than was performed by defendant; (3) defendant possessed unpublished contradictory information about plaintiff, and it either should have published that information or refrained from publishing what it did; and (4) defendant failed to pursue potentially exculpatory information about plaintiff.

First, as we have stated, malice may not be inferred from the fact that the accusations are of a serious nature, *Washington Post Company v. Keogh, supra,* 365 F2d at 970, or from a defendant's "slipshod investigation." *Colombo v. Times-Argus Assoc., supra,* 135 Vt at 458. Second, although some courts have considered "hot news," *i.e.,* the immediateness of a story, as a factor in determining actual malice, *see, e.g., Curtis Publishing Co. v. Butts,* 388 US 130, 157, 87 S Ct 1795, 18 L Ed 2d 1094 (1967); *Durso v. Lyle Stuart, Inc.,* 33 Ill App 3d 300, 305, 337 NE2d 443 (1975), no court has held that actual malice may be inferred solely from the fact that a poorly investigated, defamatory article was not "hot news." Third, plaintiff's assertion that defendant possessed contradictory information about plaintiff is based on statements made by John Roe, who had been one of plaintiff's supervisor's in the late 1960's, that plaintiff "is not a racist."[2]

---

[2] Roe testified by deposition:

"Q. Did [defendant's reporter] ask your permission to publish statements to the effect that you had no personal information that John McNabb was a racist?

Several courts have concluded that a media defendant's possession of contradictory information that has come from the plaintiff public official or his supervisors provides little support for an inference of actual malice. *See Edwards v. National Audubon Society, Inc.,* 556 F2d 113 (2nd Cir), *cert den* 434 US 1002 (1977), and *Dupler v. Mansfield Journal Co.,* 64 Ohio St 2d 116, 413 NE2d 1187 (1980), *cert den* 452 US 962 (1981).

Finally, plaintiff asserts that actual malice may be inferred from defendant's failure to follow up on potentially exculpatory information concerning him. Plaintiff excerpts a portion of the deposition of one of defendant's sources, who testified that he described plaintiff to defendant's reporter as a "young officer with red hair * * * who was well-versed in karate." Plaintiff then refers to his affidavit, in which he states that he does not have, nor has he ever had, red hair, and that he has only a faint acquaintance with the martial arts, acquired during his experience in the Army between 1962 and 1964, and forgotten soon thereafter.

■　　When a plaintiff in a libel action has shown that the defendant possesses contradictory information, or that for some reason the defendant had serious doubt as to the trustworthiness of the source of its information, some courts have been willing to infer actual malice. *See, e.g., Widener v. Pacific Gas & Electric Co.,* 75 Cal App 3d 415, 142 Cal Rptr 304 (1977), *cert den* 436 US 918 (1978); *Fopay v. Noveroske,* 31 Ill App 3d 182, 334 NE2d 79 (1975); *Wollman v. Graff,* 287 NW2d 104 (SD 1980). Here, however, plaintiff has made no showing that defendant *knew* that plaintiff does not have red hair or that he did not practice martial arts. Absent a showing of facts demonstrating knowledge from which malice may be inferred, plaintiff's final argument is, at best, grounded in defendant's investigatory failure, and we reject investigatory failure as a

---

"A. She asked me that question.

"Q. What question?

"A. If in my opinion John McNabb was a racist, and I told her no.

"Q. Did she ask you if she could publish that?

"A. I don't recall. She may have. If she did, she didn't. I don't believe she did ask me. I just don't recall."

sole ground for inferring malice. *See Colombo v. Times-Argus Assoc., supra,* 135 Vt at 458.

Summary judgment was appropriately granted on the libel claim, because plaintiff failed to show from the affidavits and depositions in the record any material issue of fact from which a reasonable jury could find actual malice.

■ Plaintiff's second assignment of error is that the trial court erred in dismissing his second claim for relief on the ground that the tort of "false light in the public eye" does not exist in Oregon. Assuming that the tort exists in Oregon, *see Flowers v. Bank of America,* 67 Or App 791, 679 P2d 1385 (1984); *Lee v. Nash,* 65 Or App 538, 671 P2d 703 (1983), *rev den* 296 Or 253 (1984); and *Martinez v. Democrat-Herald Pub. Co.,* 64 Or App 690, 669 P2d 818, *rev den* 296 Or 120 (1983), the trial court did not err in dismissing the claim. Restatement (Second) Torts, § 652E (1977) describes the tort:

> "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> "(a)   the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> "(b)   the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

Subsection (b) requires that a plaintiff prove actual malice. Our holding that plaintiff failed to show actual malice in his libel claim also bars his "false light" claim.

■ In his final assignment, plaintiff contends that the trial court erred in failing to compel defendant either to produce certain material that plaintiff had requested during discovery or to abandon the *New York Times v. Sullivan* privilege. The trial court held that Oregon's "shield law," ORS 44.510-44.530, protects the requested material from discovery. Plaintiff sought: (1) the notes made by the reporter who wrote the article, (2) the names of one or possibly two unnamed persons interviewed by defendant in preparing the article and (3) the substance of defendant's interviews of each of its sources for the article, apart from what defendant printed in the article.

ORS 44.520(1)(b) provides:

"(1) No person connected with, employed by or engaged in any medium of communication to the public shall be required by a legislative, executive or judicial officer or body, or any other authority having power to compel testimony or the production of evidence, to disclose, by subpoena or otherwise;

"* * * * *

"(b) Any unpublished information obtained or prepared by the person in the course of gathering, receiving or processing information for any medium of communication to the public."

ORS 44.530(3) provides that ORS 44.520 does not apply "with respect to the content or source of allegedly defamatory information" in civil actions for defamation when the defendant "asserts a defense based on the content or source of such information." The defense in this case was not based on the content or source of the unpublished information.

Plaintiff does not dispute that the information sought falls within the shield law privilege. Instead, he contends that the trial court, by interposing the privilege, has prevented him from discovering anything other than the very substance of the article. He argues that the ruling has prohibited him from discovering matters indicating defendant's state of mind, matters that are essential to prove actual malice and, therefore, has limited his ability to pursue a defamation action. That may be so. However, except for constitutional limitations, to the extent that a state authorizes a claim for defamation, it may also limit a party's ability to prove the claim in order to promote other social purposes.[3] Plaintiff has made no state constitutional challenge,[4] and the trial court

---

[3] *See Steaks Unlimited, Inc. v. Deaner,* 623 F2d 264, 279 (3rd Cir 1980), upholding the application of Pennsylvania's shield law (which is similar to Oregon's) in a defamation case.

[4] Article I, section 8, of the Oregon Constitution provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

was not wrong in applying the statute in the face of the challenge that plaintiff made.

Affirmed.