Argued and submitted June 4, 1999, reversed and remanded June 28, 2000

## Janice VICTORIA,
*Appellant,*

*v.*

## Monty LE BLANC,
*Respondent.*

## (97C11505; CA A103331)

7 P3d 668

Nancy Tauman argued the cause for appellant. With her on the opening brief was Hibbard, Caldwell & Schultz. On the reply brief was Renee G. Wenger.

Laura L. Crain argued the cause for respondent. With her on the brief was Smith, Freed, Heald & Chock.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Plaintiff appeals from a summary judgment that dismissed her defamation claim against defendant. The claim is based on statements that defendant made in two letters that he wrote to a local newspaper. We conclude that in those letters defendant criticized plaintiff's conduct as a public official and that federal law therefore requires plaintiff to prove a higher level of culpability than for defaming a private citizen. We also hold that the evidence on summary judgment is sufficient to create a jury question of whether plaintiff satisfied that standard.[1] We therefore reverse.

We state the facts most favorably to plaintiff, the nonmoving party. Plaintiff was the City Administrator of the City of Hubbard from 1994 until March 1996, when the city council dismissed her. While she was City Administrator, a private group, the City Park Committee, established a fund to benefit the city's parks. Plaintiff was a member of the Committee and opened a bank account on its behalf, with herself as the only authorized signer. At the time, the Committee had not completed the necessary paperwork to receive a taxpayer identification number as a nonprofit organization. Plaintiff did not wish to use her own Social Security number, or someone else's, for the bank account, and she therefore used the city's taxpayer identification number as a temporary measure. The city council was aware of plaintiff's action in opening the account and knew that the account did not contain city money; the subject was discussed at a council meeting. Before plaintiff's dismissal, only one or two council members knew that plaintiff had used the city's taxpayer identification number for the account. Her involvement with the Committee ended after her dismissal, apparently at least in part as the result of a city council decision.

Defendant is a resident of Hubbard. During most of the time that plaintiff was City Administrator, he was either

---

[1] Plaintiff argues that the trial court erred by not considering the sufficiency of the evidence after it concluded that she was a public official. Whether plaintiff is correct does not affect our ability to reach and decide the issue of sufficiency on appeal. Plaintiff also argues that defendant did not properly plead that she was a public official. She did not raise that point at the trial court, and we do not consider it.

dating or married to the city's mayor. After plaintiff's dismissal, defendant participated in a successful effort to recall Adrienne Norris, a member of the city council who had generally supported plaintiff. During that effort, defendant wrote two letters to the *Woodburn Independent* that are the basis for plaintiff's claims in this case. Each letter focused on Norris's alleged shortcomings but also referred to plaintiff as a "former city employee," "a fired employee," and similar terms, treating her as involved with Norris in the actions that the letters criticized.[2] In the first letter, published in April 1996, defendant stated that Norris "went as far as *to attempt to place city park funds under the sole control of a fired employee*, and vehemently protested when logic and clear thinking prevailed." (Emphasis added.) In the second letter, which defendant wrote in May 1996 after Norris published a short response to the first letter, defendant accused Norris of working together with plaintiff in ways that were not in the city's best interests:

> "If left alone, you and [plaintiff] would have led Hubbard down a garden path. We would have ended 1996 with shortage of police, a mass exodus of businesses from the Hubbard area, certainly no new business, and nothing tangible to show for anyone's efforts toward the city park. *Not to mention the secret bank account that only you and our former administrator knew anything about, and only she could sign for.*" (Emphasis added.)

The emphasized portions of the quotations are the bases for plaintiff's claim. In her complaint, plaintiff alleged that both letters were "intended to convey, and did convey, to the community at large, the impression that plaintiff was misappropriating city funds. * * * Defendant meant, and intended to mean, that plaintiff was stealing city funds, and was so understood by the readers of [the] publication."

We first consider whether plaintiff is a public official, thus requiring her to prove that defendant acted with actual malice, that is either knowing that the charges that he made were false or with reckless disregard of their truth or falsity. *New York Times Co. v. Sullivan*, 376 US 254, 84 S Ct 710, 11

---

[2] The parties appear to agree that those terms referred to plaintiff and that persons reading the letters would understand that they did so.

L Ed 2d 686 (1964). The question of plaintiff's status is for the court. Despite plaintiff's contrary suggestions, when there is no genuine issue as to any material fact it is as appropriate for decision on summary judgment as is any other issue. As City Administrator, plaintiff was the city's chief supervisory employee, with responsibility for all aspects of the city's government. Her position was such that "the public has an independent interest in the qualifications of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees[.]" *Rosenblatt v. Baer*, 383 US 75, 86, 86 S Ct 669, 15 L Ed 2d 597 (1966). In *Koch v. Laborico*, 66 Or App 78, 674 P2d 602 (1983), *rev den* 296 Or 712 (1984), we relied on *Rosenblatt* in holding that a police sergeant who supervised an emergency communications unit was a public official under *New York Times*. Plaintiff's responsibilities, and the public interest in her performance of them, were at least as great as with the plaintiff in *Koch*.

Plaintiff's strongest argument in this regard is that defendant wrote and published the letters after her dismissal, and thus at a time when she was no longer a public employee. In *Rosenblatt*, after the plaintiff was discharged as manager of a public ski area, the defendant criticized the former management of the area. The Court held that the termination of the plaintiff's employment did not affect his status as a public official, noting that the defendant's criticism, if it referred to the plaintiff at all, referred to his performance of his duty as a county employee. *Rosenblatt*, 383 US at 87 n 14. Defendant relies on *Rosenblatt* and on other cases in which the plaintiffs, who were former public officials or public figures, sought damages for criticism of things that they had done while they were acting in their public capacities. *See Crane v. Arizona Republic*, 972 F2d 1511 (9th Cir 1992); *Pierce v. Capital Cities Communications, Inc.*, 576 F2d 495, *cert den* 439 US 861 (1978); *Milgroom v. News Group Boston, Inc.*, 412 Mass 9, 586 NE2d 985 (1992); *Newson v. Henry*, 443 So 2d 817 (Miss 1983). In response, plaintiff relies on a case in which the court held that the plaintiff had never been a public figure, even during the time that she worked for the government. *See Peoples v. Tautfest*, 274 Cal App 2d 630, 79 Cal Rptr 478 (1969).

Neither *Rosenblatt* nor any of the cases that the parties cite deals with the precise issue in this case, in which defendant criticized plaintiff for actions that occurred *after* her dismissal but that were continuations of actions that she began while a city employee. We conclude that, because of the nature of defendant's charges, at the time of the letters plaintiff was a public official. In those letters defendant treated plaintiff as a public official, describing her by her former position rather than by name. He attacked plaintiff's alleged misconduct in the use of a bank account that she had opened while working for the city and that, he asserted, contained public funds. That attack came shortly after plaintiff's dismissal from her position and in the context of an attack on a serving member of the city council, one of whose faults, according to the letters, was her connivance with plaintiff in the misconduct. Because defendant criticized plaintiff for conduct that, as he described it, was directly related to her work as a public official,[3] we agree with the trial court that he is entitled to the protections that the First Amendment provides persons who make such criticisms.

■. The remaining question is whether the evidence is sufficient for a jury to find that defendant acted with knowledge that his statements were false or with reckless disregard of their truth or falsity. We agree with plaintiff that a jury could find that defendant's letters, particularly his accusation that plaintiff and Nelson had a secret bank account that contained city money and for which plaintiff was the only signer, accused plaintiff of misconduct in her job and that that misconduct might include stealing city funds. A jury could find that a reasonable implication from defendant's statements is that the account was discovered after plaintiff's dismissal and that there had been a misappropriation of city funds at the time of discovery.

There is also evidence from which a jury could find that defendant either did not believe those accusations or that he made no attempt to determine whether they were

---

[3] The City Park Committee was separate from the city government and plaintiff's involvement with it was nominally not part of her job duties. However, the purpose of the Committee was to improve the city's parks, and plaintiff was involved with it only while she was City Administrator. Defendant's criticisms involved her handling of its funds, which he implied in his letters was city money.

true. Although he had a close relationship with the mayor, in his deposition defendant testified that all of his knowledge about the account came from his attendance at city council meetings.[4] He also testified that the "secret bank account" referred to the parks account, that that account was not secret, that there was no attempt to keep it a secret, and that it was not a secret that plaintiff was the only signatory on it. Finally, in response to direct questions he stated that he does not think that plaintiff is a crook or dishonest, that she was trying to steal from the city, or that she was trying to hide the bank account.

From this evidence the jury could find either that defendant did not believe that plaintiff acted improperly or that he did not care whether his statements about her were true. As part of evaluating defendant's culpability, the jury could find that he did not know enough about the circumstances of the account or plaintiff's involvement with it to give him a basis to make the statements that he made. The evidence on summary judgment, thus, is sufficient to entitle plaintiff to a jury determination of her claim.

Reversed and remanded.

---

[1] There is some disagreement in the record about how many meetings defendant actually attended.