Argued May 4, reversed June 3, 1959

SPENCER ET UX *v.* ELLIS

339 P. 2d 1116

*William K. Shepherd,* Portland, argued the cause and filed a brief for appellant.

*David C. Silven,* Baker, argued the cause for respondents. With him on the brief were Banta, Silven & Horton, Baker.

Before McAllister, Chief Justice, and Rossman, Lusk, Warner, Perry, Crawford and Millard, Justices.

CRAWFORD, J. (Pro Tempore)

Defendant appeals from a decree directing specific performance of a contract for the sale and exchange of real properties in Baker and Multnomah counties.

The four assignments of error present three questions. Was defendant's offer to purchase accepted, resulting in a binding contract; if so, is defendant entitled to rescission; if not, was specific performance properly decreed.

The essential facts are these: June 28, 1957, the parties entered into a written exchange agreement. July 12, 1957, the contract with which we are concerned was signed by the defendant. July 15, 1957, defendant took possession of the Tower Motel, Baker, and remained in possession until August 7, 1957. July 19, 1957, defendant, at plaintiffs' request, wrote the word "fully" before the word "inspected" in the contract and all parties initialed the change. Later in the day, plaintiffs signed the contract in the office of their attorney in Baker, and July 22, 1957, transmitted the same to the Title & Trust Company, Portland, with letter of instructions. The morning of July 23, 1957,

Mr. Shepherd, attorney for defendant, notified the company to proceed no further, and in the afternoon of the same day the company received the letter from plaintiffs' attorney with enclosures mailed at Baker. August 2, 1957, Mr. Shepherd withdrew all papers of defendant on deposit with the company.

We are satisfied there was acceptance of the offer to purchase upon the initialing of the change and the signing of the contract, thereafter mailed to the Title & Trust Co., resulting in a binding agreement. And the parties understood this to be the effect of the transaction. Defendant manifested satisfaction with this method of acceptance and plaintiffs adopted it. 12 Am Jur, Contracts, 536, Sec. 41; *Shaw Wholesale Co. v. Hackbarth,* 102 Or 80, 198 P 908, 201 P 1066; 55 Am Jur, Vendor and Purchaser, Sec. 15.

Defendant contends the lower court erred in failing to decree rescission based on misrepresentation for which plaintiffs should be held responsible. The misrepresentation, which is conceded, related to a statement of income and expense of the Tower Motel, wherein gross income for 1956 was given as $19,537.02, expenses as $7,224.29 and net income as $12,312.73. Admittedly the net income was but $3,905.89. This incorrect information was contained in defendant's exhibits 4 and 8 for identification, which were not formally received but which apparently were considered by the trial judge. Exhibit 8, from which exhibit 4 was taken, is a statement describing the physical features of the Tower Motel and lists expenses and gross income. The gross income is stated as $19,537.02, the total expenses as $7,224.29. Exhibit 4, entitled "Operating Statement of Tower Motel, Baker, Oregon, 1956," lists gross income $19,537.02, expenses $7,224.29, and in two places net income $12,312.73. The follow-

ing also appears on this exhibit: "These figures are figures furnished by the owners of the Tower Motel and not any brokers figures." The origin of the contents of these exhibits and the part they played in this transaction follow.

Three sets of real estate brokers participated: Payne & Faust, with whom plaintiffs had an "oral" listing of the Tower Motel, represented by Elmer G. Seidler; E. H. Boly & Son, with whom defendant had previously listed her Portland property for sale, represented by Elwyn Boly, sole proprietor of E. H. Boly & Son, and by Carl W. Poss, Jr., general manager of E. H. Boly and Son; and Collyer T. Potter, instrumental in bringing the parties together to consummate the sale, represented by Elmer F. Niemala.

In 1956 and 1957 Seidler was representing plaintiffs in connection with the sale of the Tower Motel for which he had a "verbal" listing. Exhibit 8 was prepared in his office from figures he took from plaintiffs' books and records. Plaintiffs gave him the books, saying, "Well heres our records you take the copy." Seidler made notes from which Exhibit 8 was prepared. Exhibit 4 was prepared in Seidler's office under his supervision from exhibit 8. Poss "picked up" a copy of Exhibit 8 in Seidler's office, showed it to defendant and discussed the same with her. Boly had no personal knowledge of the source of exhibit 4 but "found same in his office files" and he and Niemala discussed the same with defendant on the trip to Baker prior to the signing of the exchange agreement, and the exhibit was shown to her. Plaintiffs and the three brokers were sharing a common effort: to effect the sale of plaintiffs' Tower Motel. Every act showed in the transcript just what was to be expected of party and agents eager to make a sale. There was here a rather

unusual representation and participation. Seidler primarily representing the plaintiffs, Boly primarily representing the defendant, and Niemala, the so-called "go-between," seeking to tie up the deal; and yet all cooperating in a joint endeavor. Collectively and individually they participated in all negotiations that preceded and contributed to the sale. Commissions were split three ways; and their joint efforts, though addressed to different phases and incidents, brought about the deal's consummation. We cannot and need not apportion the separate contributions and responsibilities of each agent and thus consider and evaluate the same divorced and apart from those of the others; they must be considered as concurring factors creating the situation of which defendant complains and resulting in misrepresentation causing her to purchase the Tower Motel. Clearly, there was misrepresentation justifying rescission if plaintiffs are responsible therefor and if defendant relied thereon. *Sharkey v. Burlingame Company*, 131 Or 185, 197, 282 P 546, 550; *Dahl et al. v. Crain et ux.*, 193 Or 207, 229, 237 P2d 939; *Gamble et ux. v. Beahm*, 198 Or 537, 257 P2d 882; 37 CJS, Fraud, Sections 8 and 9, pp 224, 225.

Much of the foregoing relating to the factual origin of the misleading statements and the utilization of this information in prosecution of the sale applies with equal force to the question of agency. We find plaintiffs orally listing the Tower Motel with Seidler and furnishing their books that information might be secured for his use in promoting a sale on their behalf, and knowing that Seidler intended to use such information in making the sale. Seidler secured data from plaintiffs' books and is responsible for exhibits 4 and 8, and Seidler's office made these exhibits available to Boly and Poss. Boly and Niemala accompanied

defendant to Baker and en route and after arrival discussed the exhibits with her. Boly testified he told defendant the income statement was correct on the basis of the statement he had seen. There is here an unbroken chain of causation leading from Seidler's preparation of exhibits 4 and 8 to the part they played through Boly, Poss and Niemala in influencing defendant to purchase the Tower Motel. Clearly, plaintiffs are responsible for Seidler, to whom they had given an oral listing and whose active representation they aided and accepted, paying a commission to all three agents.

 Further, the exchange agreement bears this endorsement:

"I hereby ratify and confirm the employment of E. H. Boly & Son and Collyer T. Potter, real estate broker, to procure a purchaser for my property above described and in consideration of services performed by said broker in negotiating and bringing about the foregoing sale, hereby agree to pay said broker forthwith a commission of $4,750. $3000. cash bal of $1750. payable in 6 mos plus 5% interest.

s/d Warren A. Spencer
Thelma M. Spencer."

Thereafter a check for $3,000 and note for $1,750 were delivered to Boly, Payne and Faust and Potter. Plaintiffs may not take advantage of Seidler's error which initiated the circumstances resulting in the sale, pay a commission for services rendered and at the same time disclaim responsibility. Agency may be established by evidence applicable to civil actions generally. 2 Am Jur, Agency, Sec. 441, p 348; 3 CJS, Agency, Sec 328, p 297. Circumstantial evidence is ordinarily competent to establish the fact or extent of agency. *Bailey et al. v. Opp et al.*, 159 Or 301, 77 P2d 826, 80 P2d 40.

> "The existence of agency may be proved like any other fact. It is to be determined from the entire evidence in the case and from all the facts and circumstances in evidence. While direct or positive evidence thereof is sufficient to prove agency, it is not necessary; agency may be sufficiently proved by circumstantial evidence, such as evidence of the apparent relation of the parties and their conduct with reference to the subject matter." 3 CJS, Agency, Sec. 328, p 300.

■ Plaintiff argues that defendant was not entitled to rely on any misrepresentation even though they might be responsible therefor, because of Exhibit N. This is an expense sheet containing a jumble of unexplained, unorganized figures not understandable without other reference or outside aid. Defendant had a bare glance at it. Niemala compared it with exhibit 4 in plaintiff's presence, and Niemala and Boly together compared the two documents in defendant's presence in the park. Neither found anything in exhibit N to impeach exhibit 4 except for a painting item; and they so advised the defendant. For these reasons, the unintelligible nature of the exhibit, the examination made by Niemala and Boly, who found nothing untoward, and the positive nature of the representations for which plaintiff must be held responsible, defendant is not estopped by reason of her reliance on exhibits 4 and 8. *Menefee v. Blitz,* 181 Or 100, 179 P2d 550; *Melgren v. Frank L. McGuire, Inc.,* 214 Or 128, 327 P2d 1114; *Gamble et ux v. Beahm,* supra.

> "* * * The courts seem to be well agreed that where the means of obtaining information are not equal, the positive representations of the person who is supposed to possess, or does possess peculiar or superior means of information may be relied on, and under such circumstances investigation may be

dispensed with." 23 Am Jur, Fraud and Deceit, Sec 146, pp 950, 951.

and the test of reliance is stated in 37 CJS, Fraud, Sec 29, p 271.

> "It is generally held that whether the party would have acted in the absence of the representation is the test of whether or not he relied thereon; that to secure redress for false representation complainant must show that he would not have acted but for such representation; * * *."

Obviously defendant would not have entered into the deal in the absence of such misrepresentations, and so testified.

■ For reasons stated, defendant is entitled to decree rescinding the contract of July 12, 1957.

Reversed.