Argued May 12, affirmed June 22, 1960

# BAKKENSEN *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE CO.

### 353 P. 2d 558

*James H. Clarke*, Portland, argued the cause for appellant. With him on the briefs were Koerner, Young, McColloch & Dezendorf and Wayne Hilliard, Portland.

*Laurence Morley*, Lebanon, argued the cause for respondent. With him on the brief was C. S. Emmons, Albany.

Before MCALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and MILLARD, Justices.

MILLARD, J. (Pro Tempore)

The defendant insurance company appeals from a judgment of the circuit court of Linn county in the sum of $1,040, plus attorney's fees and costs, rendered

in favor of the plaintiff in an action wherein he is claiming disability benefits as a workman under the terms of a policy of group insurance issued by defendant upon the application of plaintiff's union and wherein full-time employees are eligible if covered by an agreement between the employer and the union under its health and welfare program. In connection with this it appears that it is without question that plaintiff was an employee of an employer who entered into such an agreement with his union and that a policy of group insurance was issued.

Upon the completion of plaintiff's case in chief, defendant moved for an involuntary nonsuit, which was denied. Upon conclusion of the trial both parties moved for a directed verdict, and thereupon a verdict was directed in favor of plaintiff. Defendant first assigns as error the denial of each of its motions. Both, in effect, were based upon the grounds that there was insufficient evidence to establish that plaintiff was a full-time employee under the terms of the policy by showing that he worked a regularly scheduled working week equal to or in excess of 20 hours a week.

■ It, therefore, becomes necessary that we review the evidence in the light most favorable to plaintiff. The policy provided that as a part of its "Basic Insurance" benefits, plaintiff, if he were eligible, would be entitled to certain "nonoccupational weekly benefits" for a period of about 26 weeks if while insured for accident and sickness under the policy, he became wholly and continuously disabled by disease for which he was not entitled to any benefit under a Workmen's Compensation Law or Act, and was prevented from performing any and every duty of his occupation. There was no contention made that plaintiff could have made claim under the Workmen's Compensation Law as it then

existed, nor could such have been done. The policy further provided that "Basic insurance" was available to "Eligible Class of Employees" defined as "each full time employee, if the work of such employee is covered by a Collective Bargaining Agreement of an Employer with a local of the IWA-CIO—Northwest Region providing Health and Welfare Benefits under the IWA—Health and Welfare program \* \* \*."

The benefits claimed are covered by provisions of the policy relating to nonoccupational weekly benefits which provided that "If disability commences while actively at work as a full time employee: 70% of basic weekly wage but in no event to exceed $40 per week." The policy defined "Basic weekly wage" as "the normal number of hours per week in the employee's work schedule, not to exceed forty hours, multiplied by the employee's hourly wage rate," exclusive of bonus or overtime.

The policy also defined a full-time employee as "an employee whose regular working schedule with one Employer equals or exceeds twenty hours per week." At this point we digress to point out that this does not expressly require the employee to work 20 hours per week, but only that a regular working schedule be contemplated for such period. The term "regular working schedule" is not separately defined therein. The union contract, however, which was admitted into evidence over defendant's objection does contain provisions with reference to hours of work as follows:

> "The regular hours of labor shall consist of five (5) consecutive eight (8) hour days. All time worked in excess of eight (8) hours in any one day shall be paid for at one and one-half times the employee's job rate of pay. All work performed on the sixth and seventh day of the regularly scheduled work week shall be paid for at one and one-half

times the employee's job rate of pay. The regularly scheduled work week shall at all times commence on Monday.

"* * * * *

"An employee called to his job but not put to work, through no fault of his own, shall receive two (2) hours' pay unless notified prior to reporting that his services are not required. * * *."

Plaintiff was not an emergency fire fighter but was hired as a fire watcher at logging operations and seasonally had worked for his employer in that capacity more than one year. It appears that watchers were required because after the start of the fire season on April 1, forestry regulations required the employer engaged in logging to keep a watcher present at the point of operations while the loggers were off work and while there was a danger of fire. He started to work for the company on May 13, 1956, at the rate of a few cents over $2 per hour. He worked four days in May, four days in June, and ten days in July prior to his disability on July 26. His insurance premiums were deducted from his pay check and remitted to defendant, who accepted them and then attempted to return them after plaintiff made a claim for disability, claiming that the company was unaware of the hours plaintiff actually worked. On July 26, 1956, while on the job, plaintiff suffered a heart attack, disabling him for at least 26 weeks. Plaintiff testified in effect that under the terms of his employment he was required to be available for work every morning, although he was not required to work if it rained or if in the discretion of the employer there was no danger of fire and that if he had not been available he would have been fired. In any event, whether in fact he did work on any particular day depended on whether or not in the discretion of his employer there was a danger of fire so

that in fact his actual hours of work were erratic. Witness Stratman, called by defendant and who was the fire warden for the employer and who had charge of this phase of the work, testified in reference to the fire watchers that "They were supposed to come. It might be sunshining where they live and it might be raining in the mountains." In response to the question: "So sometimes it was your job to keep them from work or vice versa?, the witness answered "No. They were to find from the office if they were to go to work." The witness answered "yes" when asked "So from April 1 to November 1 the men know they have a job as fire watchers." He further testified they were paid for an eight-hour day, the same as the fallers and buckers. Defendant's witness Todd, personnel manager for the employer, testified that Stratman told them whether to come to work and that in that respect their position was different from that of the loggers who reported unless told otherwise.

■ Since only full-time employees were eligible for insurance if covered by a union agreement and since plaintiff was subject to such an agreement, we now consider the question of whether or not plaintiff was a full-time employee. It appears that plaintiff was at all times required to be available for work even though his services might not be required. In the case of *Harlan v. Washington Nat. Ins. Co.*, 388 Pa 88, 130 A2d 140, wherein the question was whether or not a seasonal or transitory employee was a full-time employee within the meaning of that term as contained in a group policy of life insurance, it was stated:

"Full time employment does not mean full time pay. It means being available for full employment, and full employment does not mean a hand at the helm throughout the entire voyage; it means stand-

ing by to take over when the exigencies of the passage required the application of one's skill acquired over many journeys of the past."

■ We adopt this definition with reference to this case and, therefore, hold that since plaintiff was required to be available for work during the whole term of his employment, he was in fact a full-time employee.

■■ We now turn to a consideration of whether or not he was a full-time employee under the terms of the policy, since to qualify plaintiff must show that he was an employee "whose regular working schedule with an employer equals or exceeds twenty hours per week." Webster's New Collegiate Dictionary defines schedule as a "tabular statement of times of projected operations, recurring events"; and as "a time table." It is our opinion that the term "schedule" was used here in the sense that it referred to projected operations. By that we mean not what he did do but what he was required to do under his contract of employment. It thus became a question of proof as to the terms thereof. As to that, we are concerned with what hours were scheduled for him. In making that determination the jury was certainly entitled to consider the provisions of the union contract made with the employer for his benefit, which dealt with projected hours of labor. From that it would appear that plaintiff could be required to work five consecutive eight-hour days.

■ Plaintiff, over objection, was permitted to introduce evidence showing that he had sustained other heart attacks while working as a fire watcher for the same employer under the same insurance contract and that the defendant paid his disability claims. Such evidence was admissible not to vary the terms of the policy but as an admission bearing on the question

of what was scheduled under the terms of the work contract.

Defendant argues in effect that the term "regular working schedule" means the time regularly spent working. If such contention is correct, then the phrase is susceptible of two constructions and, hence, is ambiguous. In *Henry v. Harker*, 61 Or 276, 290, 118 P 205, 122 P 298, while holding that construction of a contract is generally a matter of law for the court "if the language itself is not clear and it can be shown that both parties placed a particular interpretation upon it and acted upon that interpretation, evidence showing such interpretation may be admitted." See also *Wood et al. v. Davin et al.*, 122 Or 74, 78, 79, 257 P 690, and cases there cited.

Thus, we are inclined to the theory that the policy was not ambiguous and that the term "regular working schedule" had to do with the hours that the plaintiff could be required to work under his contract of employment and not with what times he did work as opposed to the theory of ambiguity which, incidentally, plaintiff argued for and which defendant opposed on the basis that its construction was the only one to be adopted. We hold that under either theory there was sufficient evidence to go to the jury as to that question.

Defendant contends that in any event plaintiff cannot recover because there is a lack of evidence of basic weekly wage. There was evidence of plaintiff's hourly wage. The definition of "basic weekly wage" was by the terms of the policy based upon the "work schedule," not to exceed forty hours multiplied by the employee's hourly wage rate, "less bonus or overtime." Again it appears that the basic weekly wage was based upon what was scheduled and not what time was actu-

ally spent, the same reasoning applying to this as was applied to "regular working schedule."

For the reasons stated we hold that there was sufficient evidence to go to the jury and that both the motions for involuntary nonsuit and directed verdict were properly denied.

■ The second, third, fifth and sixth assignments of error have to do with the receipt of incompetent evidence offered by plaintiff and objected to by defendant. Plaintiff was permitted to introduce the testimony of a union official to the effect that under the terms of the union contract a fire watchman was a full-time employee. Evidence was offered showing that other fire watchers paid premiums. There was also received in evidence a letter from the union stating in effect that plaintiff's work schedule had not changed and that defendant had established a precedent by paying plaintiff's former claims. Plaintiff was permitted to testify that there were no employees of his employer not designated as full-time. All this evidence was incompetent, and the court committed error in its reception. It does not follow, however, that such errors were prejudicial and, therefore, reversal is required. It will be recalled that this case was decided by the court upon motions for directed verdicts made by both parties. Unless it reasonably appears from the record that incompetent evidence did influence the court in its decision, it will be presumed in the absence of indications to the contrary that the trial judge disregarded incompetent evidence which he erroneously admitted. *Brackett, Exec., v. U.S. Nat. Bank*, 185 Or 642, 654, 655, 205 P2d 167. A review of the record does not reasonably indicate any such influence, and, hence, prejudicial error requiring reversal did not result.

The fourth assignment of error has to do with receipt in evidence of testimony as to plaintiff's prior employment as a fire watcher by the same employer and the payment of claims by defendant, all heretofore referred to. We have already pointed out that this evidence was relevant as an admission. We find this assignment without merit.

The seventh assignment has to do with the admission in evidence of the union contract, over defendant's objection. We have already pointed out the relevancy of this evidence. Further, plaintiff, in order to establish eligibility under the terms of the insurance contract was required to prove that his work was covered by a union contract. We find this assignment without merit.

The eighth assignment of error has to do with the refusal of the court to admit in evidence a letter from one union official to another, having to do with action of the union in upholding the action of the insurance company in refusing to pay plaintiff's claim. The addressee had as a witness prior thereto been allowed to testify improperly as plaintiff's witness that the union regarded plaintiff as a full-time employee. We have already held that the testimony of the witness was improperly admitted but not considered by the court in arriving at its decision. Under such circumstances the failure to admit the proffered exhibit could not constitute reversible error.

In view of the conclusions reached, it follows that the judgment of the circuit court is affirmed.