Argued October 11, reversed and remanded November 1, 1961

# BLAIR *v.* UNITED FINANCE COMPANY

365 P. 2d 1077

*Warde H. Erwin,* Portland, argued the cause and filed a brief for appellant.

*Denton Burdick, Jr.,* Portland, argued the cause for respondent. On the brief were Hutchinson, Schwab & Burdick, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and LUSK, Justices.

GOODWIN, J.

Plaintiff appeals from a judgment of involuntary nonsuit granted the defendant finance company in an action to indemnify Blair for a judgment rendered against Blair in favor of one Berry arising out of the conversion of a truck. See *Berry v. Blair et al,* 209 Or 15, 303 P2d 944. Blair now seeks to recover the amount of that judgment plus his costs and attorney fees expended in connection therewith on the theory that when he did the acts for which liability was im-

posed he was acting as the agent of United Finance Company.

The facts out of which this controversy arose are reported at length in *Berry v. Blair et al,* supra, and need not be rehearsed here. Suffice to say that a jury in that case found that Blair had wrongfully repossessed a truck. The trial court in the case at bar gave the following reason for allowing the nonsuit:

> "* * * [A]ll the evidence points to but one conclusion; that the plaintiff in wrongfully taking possession of the truck was not then and there acting for the defendant but was * * * acting in his own interest or in the interest of Green or both."

Walter Green and Todd Green, residents of the State of Washington, had been authorized by United to repossess the truck in question. The Greens also had a financial interest in the truck, and upon repossessing the truck they paid the balance owed United and then sold the truck to satisfy the amount of their claim.

■ Blair was the person who actually drove the truck away. Blair also was interested in seeing that United was paid, because he had guaranteed the original sales contract. Blair had put the sale together, and, if the transaction had gone according to plan, would have collected a commission. He prepared the contract and assigned it to United. It was what is known in the trade as "recourse" paper.

The question now before the court is whether the jury should have been given an opportunity to decide the truth of the plaintiff's assertion that he was acting on behalf of United as well as on behalf of the Greens and, incidentally, in his own interest. Blair's second amended complaint apparently was drawn

under a theory of recovery fitting the general principles set forth in Restatement, 2 Agency2d 329, § 439:

"When Duty of Indemnity Exists:

"Unless otherwise agreed, a principal is subject to a duty to exonerate an agent who is not barred by the illegality of his conduct to indemnify him for:

"(a) * * * * *

"(b) * * * * *

"(c) payments of damages to third persons which he is required to make on account of the authorized performance of an act which constitutes a tort or a breach of contract;

"(d) expenses of defending actions by third persons brought because of the agent's authorized conduct, such actions being unfounded but not brought in bad faith; * * *

"(e) * * * * *."

Blair's pleading seeks to impose liability upon United both on the basis of a subagency under the authority given the Greens to repossess the truck, and under the theory that even if the Greens never had authority from United to delegate any duties to Blair, Blair in his own right was also an agent of United for the purpose of obtaining possession of the truck. The pleading is not a model of clarity on this point, but it does allege that United "directed and authorized" Blair to repossess the truck.

■■ If Blair was in fact acting for United, the fact that the Greens also were interested in the truck would not exonerate United, or necessarily prevent Blair from acting as an agent of United. An agent can work for more than one principal. *State of Oregon v. Rice*, 206 Or 237, 291 P2d 1019. And a principal is not restricted in the number of agents it may employ. As a corporation, United acts only through

agents. Certainly, Blair was available and could have acted as United's agent in the transaction giving rise to this litigation.

■■ The basic question, which should have been submitted to the jury under appropriate instructions, was whether at the time Blair participated in the seizure of the truck he was acting under the direction and control of United. The fact that United promptly got its money is merely some evidence that the seizure benefited United. This fact alone does not prove that United exercised, or even had the right to exercise, control over Blair. The issue of control, or right to control, was for the jury on all the evidence. *Spencer et ux v. Ellis,* 216 Or 554, 560, 339 P2d 1116.

United relies on Exhibit 4, typewritten on United's letterhead as follows:

" November 5, 1952

"TO WHOM IT MAY CONCERN

"This will authorize the bearer, Walter Green, to act for us in the matter of the delinquent obligation of Don Berry, concerning a 1947 Peterbilt truck, Motor No. 70516, Serial No. L-822, and a 1942 Walker trailer, Serial No. W18T180. The balance due is $3839.55, and monthly payments of $467.99 are delinquent since June 12th, making the total delinquency $2,339.95. Mr. Green is authorized to collect all past due payments for us, or in his discretion, to take possession of the collateral in our behalf. His authorization to act for us is limited to the above named.

" UNITED FINANCE CO.

" By Benoit McCroskey [signed]
Manager Contract Dept."

United says that since the authority contained in Exhibit 4 ran exclusively to Green, Blair cannot claim

to be either the agent of United or the subagent of United. Obviously, Exhibit 4 authorizes no such subagency. United's argument, however, might be more convincing if Exhibit 4 were the only evidence in the record from which the relationship of the parties can be gleaned. The record contains in addition to Exhibit 4, for example, uncontradicted testimony of Blair concerning a telephone call prior to the seizure of the truck. United's local manager, McCroskey, was said to have answered Blair's inquiry whether authority to repossess was still in effect:

"Well, you found it, go ahead and get it."

■ There was other testimony in the record to like effect. We must test the evidence, upon motion for a nonsuit, in the light most favorable to the plaintiff. *Bakkensen v. Hancock M. Life Ins. Co.*, 222 Or 484, 353 P2d 558. There was a jury question.

■ At the trial, United urged that *Berry v. Blair et al,* supra, was *res judicata* with reference to Blair's present allegation that he was acting on behalf of United. The defense of *res judicata* has no merit.

The former case involved an effort by the victim of the conversion to recover against multiple defendants. Liability of one does not exclude the possible liability of others. The rule found in the Restatement, 2 Agency2d 116, § 349, is as follows:

"An agent who does acts which would otherwise constitute trespass to or conversion of a chattel is not relieved from liability by the fact that he acts on account of his principal and reasonably, although mistakenly, believes that the principal is entitled to possession of the chattels."

United can no more rely on Berry's failure of proof of United's role in the former action than it

could rely on Berry's election not to sue United, or his failure to obtain service on United if such had been the case. Berry was interested in recovering against a solvent defendant. He did so. The insufficiency of Berry's proof of agency to hold United in the first case is not binding on Blair, and the judgment is not *res judicata*. The parties were different and the causes of action were different. See Restatement, Judgments 293, § 68 (2). Neither do the comments of this court concerning the facts in one case bind different parties in another. *Tupper v. Amort,* 222 Or 33, 350 P2d 904, 352 P2d 563.

For the reasons set forth above, the judgment of nonsuit was in error.

Reversed and remanded.