Argued and submitted November 21, 1994, reversed and remanded in part and otherwise affirmed on appeal; reversed in part and otherwise affirmed on cross-appeal May 10, 1995

Steven D. WALLULIS,
*Appellant - Cross-Respondent,*

*v.*

Tom DYMOWSKI
and Communications Workers
of America, Local 7901,
*Respondents - Cross-Appellants.*

Tom DYMOWSKI
and Communications Workers
of America, Local 7901,
*Third-Party Plaintiffs - Cross-Appellants,*

*v.*

AMERICAN TELEPHONE
AND TELEGRAPH COMPANY,
a New York corporation,
*Third-Party Defendant - Cross-Respondent.*

(9101-00424; CA A79806)

895 P2d 315

Richard C. Busse argued the cause for appellant - cross-respondent. With him on the briefs was Scott N. Hunt.

Robert K. Udziela argued the cause for respondents - cross-appellants and third-party plaintiffs - cross-appellants Communications Workers of America, Local 7901. With him on the briefs were Kevin Keaney and Pozzi, Wilson & Atchison. Also on the opening brief were Bernard Jolles and Jolles, Sokol & Bernstein, P.C., for respondent - cross-appellant and third-party plaintiff - cross-appellant Tom Dymowski.

Jeffrey M. Batchelor argued the cause for third-party defendant - cross-respondent. With him on the brief were Christopher C. Brand and Lane Powell Spears Lubersky.

Before Warren, Presiding Judge, and Richardson, Chief Judge, and Edmonds, Judge.

WARREN, P. J.

## WARREN, P. J.

In this action for defamation and intentional interference with economic relations, plaintiff appeals from a summary judgment. ORCP 47 C. Defendants cross-appeal from a judgment dismissing their claims for contribution and indemnity against third-party defendant American Telephone and Telegraph (AT&T) for failure to state a claim.[1] ORCP 21 A(8).

Plaintiff worked for AT&T as a supervisor. In 1989, he began working at an AT&T facility in Beaverton. Defendant Dymowski was the union steward of the crew that plaintiff managed at that facility and a vice president of Communications Workers of America Local 7901 (CWA). A few months after plaintiff began working there, Dymowski observed behaviors that led him to believe that plaintiff had an alcohol abuse problem. On several occasions, Dymowski noticed that plaintiff came to work late, was hard to contact during the day and looked like he had a hangover. Other crew members complained about plaintiff's behavior. In February 1990, Dymowski filed a grievance against plaintiff, which concerned plaintiff's order that Dymowski contact him before conducting union business while on the job. That same month, Dymowski had an altercation with plaintiff about an expense voucher. Dymowski called plaintiff's supervisor, Potter, and complained about plaintiff's conduct. Dymowski filed a second grievance. Management resolved both grievances.

Dymowski continued to receive complaints from others about plaintiff. In September 1990, AT&T required Dymowski to attend a training seminar. Before Dymowski attended the seminar, an employee who plaintiff had supervised at a different location, Booze, told Dymowski that plaintiff was a "substance abuser." Next, a crew member asked Dymowski to forward the crew's complaints about plaintiff's behavior to Potter. Dymowski agreed to tell Potter "all I know." At the training seminar, Dymowski told Potter that he had been getting complaints from the crew that plaintiff was hard to reach, arrived late to work and took long

---

[1] Defendants listed plaintiff as a cross-respondent in their notice of appeal. Because they brought this third-party claim only against AT&T, the cross-appeal is not applicable to plaintiff.

lunch breaks. He repeated Booze's allegation that plaintiff was a substance abuser. Potter's supervisor, Kastening, was standing nearby and heard the conversation. Later, Potter and Kastening called crew members for more information about plaintiff. In October 1990, AT&T removed plaintiff from his job. It offered him another job in California. Plaintiff declined.

Later, plaintiff brought this action, asserting claims for defamation and intentional interference with economic relations against Dymowski and CWA. CWA brought a third-party action for contribution and indemnity against AT&T. Plaintiff's defamation claim alleged that Dymowski's statements to Potter at the training seminar were "false and defamatory." The claim for intentional interference with economic relations alleged that defendants intentionally interfered with plaintiff's employment by making false statements about his purported substance abuse or, alternatively, because Dymowski had a personal vendetta against him. Defendants moved for summary judgment against plaintiff. AT&T moved to dismiss defendants' third-party complaint for failure to state a claim.

After the summary judgment hearing, the trial court granted plaintiff's motion to amend the complaint to add a second claim[2] for defamation, which alleged, in part:

> "Dymowski knew that allegations of substance abuse about Plaintiff were false, or acted in reckless disregard for the truth or falsity of those allegations."

The trial court then granted defendants' motion for summary judgment, concluding that the conduct that formed the basis of plaintiff's first claim for defamation and the claim for intentional interference with economic relations was regulated by the National Labor Relations Act, 29 USC section 151 *et seq* (NLRA), and that, therefore, it did not have jurisdiction to hear those claims. Next, it concluded that plaintiff's second claim for defamation presented no genuine issue of material fact. Finally, it granted AT&T's motion to

---

[2] Defendants do not challenge the granting of that motion. Plaintiff's amended complaint asserts three claims for relief: (1) Intentional interference with economic relations; (2) defamation; and (3) defamation with actual malice. For convenience, we will refer to plaintiff's defamation claims, respectively, as his first and second claims for defamation.

dismiss. Plaintiff appeals the summary judgment and defendants cross-appeal the judgment dismissing their third-party complaint for failure to state a claim.

■ We discuss, first, plaintiff's assignments challenging the summary judgment for defendants. To prevail on its summary judgment motion, defendants must show that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 700-01, 588 P2d 1100 (1978).

■ ■ Plaintiff's first assignment asserts that the trial court erred in granting summary judgment on his first claim for defamation. The issue is whether the conduct that is the basis of liability, Dymowski's allegedly defamatory statement, is within the exclusive jurisdiction of the National Labor Relations Board (NLRB). The NLRA provides for the comprehensive regulation of labor-management relations and vests the NLRB with jurisdiction to resolve disputes involving the regulated conduct. Section 7 of the NLRA, 29 USC section 157, protects "concerted activities," including the right of employees to "assist labor organizations * * * for the purpose of mutual aid or protection." Section 8 of the NLRA, 29 USC section 158, prohibits unfair labor practices. In *San Diego Unions v. Garmon*, 359 US 236, 242, 79 S Ct 773, 3 L Ed 2d 775 (1959), the Supreme Court discussed labor-management relations governed by those sections:

"The nature of the judicial process precludes an ad hoc inquiry into the special problems of labor-management relations involved in a particular set of occurrences in order to ascertain the precise nature and degree of federal-state conflict there involved * * *. * * * To the National Labor Relations Board * * * must be left those precise and closely limited demarcations that can be adequately fashioned only by * * * administration."

In other words, the NLRB has primary jurisdiction over labor disputes involving activities that are, or could even "arguably" be, protected or prohibited by sections 7 or 8. 359 US at 245.

Plaintiff correctly contends that, here, a predicate to NLRA preemption is that Dymowski's statements occurred

during a "labor dispute." That term is broadly defined by the NLRA as:

> "[A]ny controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." 29 USC § 152(a)(9).

The heart of plaintiff's argument is that, in the context of a claim for defamation, the term "labor dispute" applies only to statements made during a union's organizational efforts. In support of that argument, plaintiff cites *Lundgren v. Pawtucket Firefighters Ass'n*, 595 A2d 808 (RI 1991). We are not persuaded. In *Lundgren*, the plaintiffs were firefighter battalion chiefs who brought a claim for defamation against a union. The union argued that the NLRA preempted the claim. The Rhode Island Supreme Court determined that the claim was not preempted, based *solely* on its conclusion that plaintiffs were not "employees" within the scope of the NLRA. 595 A2d at 815. *See* 29 USC § 152. Therefore, whether or not a labor dispute existed, as that term is defined by the NLRA, was irrelevant to the court's decision.

It is well settled that labor disputes may exist in circumstances that do not involve organizing activities by a union. *See, e.g., Jacksonville Bulk Terminals v. Longshoremen*, 457 US 702, 711-14, 102 S Ct 2673, 73 L Ed 2d 327 (1982); *Railway Labor Exec. Ass'n v. Wheeling & Lake Erie Ry.*, 914 F2d 53, 55 (4th Cir 1990); *Aarco v. Baynes*, 391 Mass 560, 563 n 3, 462 NE2d 1107 (1984). That is equally so in claims based on a union's alleged defamatory statements about management. *Beverly Hills Foodland, Inc. v. Union*, 39 F3d 191, 194-95 (8th Cir 1994).

Here, the uncontradicted evidence is that Dymowski made the allegedly defamatory statement in the context of telling Potter, plaintiff's supervisor, about complaints he had received from his crew concerning plaintiff's work-related conduct and how it affected work conditions. Under those circumstances, and considering the broad statutory definition, we conclude that the allegedly defamatory statement

occurred during a labor dispute as a matter of law.[3] *Id.* at 195; *Hasbrouck v. Sheet Metal Workers 232*, 586 F2d 691, 694 n 3 (9th Cir 1978). Plaintiff's remaining arguments about the issue of whether a labor dispute existed do not require discussion.[4]

The next issue is whether Dymowski's allegedly defamatory statements were actually or arguably protected or prohibited by sections 7 or 8 of the NLRA. In *Letter Carriers v. Austin*, 418 US 264, 279, 94 S Ct 270, 41 L Ed 2d 745 (1974), the United States Supreme Court discussed whether a state action that was based on an allegedly defamatory statement made during a labor dispute was preempted.[5] There, a union newsletter regularly published, under the heading "List of Scabs," a list of employees who had not joined the union. The plaintiffs successfully brought an action for defamation against the union. On appeal, the union argued that the NLRA preempted the claim. The Supreme Court held that the plaintiffs' claim was preempted unless they could show that the defamatory statement was made

---

[3] In his reply brief, plaintiff cites *Oetzman v. Ahrens*, 427 NW2d 421 (Wis App 1988), for the proposition that Dymowski's statements did not occur during a labor dispute. *Oetzman* involved an action against a union and its representative for allegedly defamatory statements made about the supervisor's purported sexual harassment of a union employee. The defendants argued that the NLRA preempted the claim. The Wisconsin Court of Appeals disagreed, concluding that the claim was not preempted, because the plaintiff's alleged misconduct had *nothing to do with an issue dividing labor and management*. 427 NW2d at 424. Here, the uncontradicted evidence is that plaintiff's work-related conduct caused friction between him and those whom he supervised. Thus, in context, Dymowski's statements to Potter *did* concern an issue dividing labor and management.

[4] Moreover, in *Letter Carriers v. Austin*, 418 US 264, 279, 94 S Ct 2770, 41 L Ed 2d 745 (1974), the United States Supreme Court discussed the term "labor dispute" in the context of a claim involving an allegedly defamatory statement and said:

"[W]hether * * * pre-emption of state libel remedies is applicable obviously cannot depend on some abstract notion of what constitutes a 'labor dispute'; rather, application [of preemption] must turn on whether the defamatory publication is made in a context where the policies of the federal labor laws leading to protection for freedom of speech are significantly implicated."

Thus, federal labor law favors uninhibited debate on issues dividing labor and management. 418 US at 273. That is so here. Because it is undisputed that plaintiff's conduct caused friction between him and those whom he supervised, the union's representative, Dymowski, should have the freedom to speak to management about plaintiff's behavior.

[5] The plaintiffs' claim in *Letter Carriers* was preempted by a different regulatory scheme. However, the Court observed that that scheme had provisions "remarkably similar" to those found in sections 7 and 8 of the NLRA. 418 US at 274.

with "actual malice," that is, with knowledge of its falsity or with reckless disregard for the truth.[6] 418 US at 275.

Plaintiff's first claim for defamation does not allege that Dymowski made the substance abuse accusations with actual malice. Therefore, if Dymowski's statements to Potter were actually or arguably protected or prohibited by NLRA, sections 7 or 8, plaintiff's first claim for defamation is preempted. 418 US at 271-73. Dymowski's conduct in telling Potter of the crew's complaints about plaintiff's behavior arguably could be protected under NLRA, section 7, because that conduct could have been meant to assist the union "for the purpose of mutual aid or protection." Under those circumstances, we conclude that the trial court correctly determined that the NLRB had primary jurisdiction over plaintiff's first claim for defamation, because it was for the NLRB "to ascertain the precise nature and degree of [the] federal-state conflict."[7] *San Diego Unions*, 359 US at 242.

■ Plaintiff's next assignment is that the court erred in granting summary judgment on his second claim for defamation. The trial court concluded that there was no genuine issue of material fact about whether Dymowski knew that the substance abuse allegations were false, or that he acted in reckless disregard of the truth. *See Letter Carriers*, 418 US at 275; *Koch v. Laborico*, 66 Or App 78, 87, 674 P2d 602 (1983), *rev den* 296 Or 712 (1984). Plaintiff argues that the evidence shows that Dymowski believed plaintiff had only a drinking problem and that he was reckless in telling Potter about plaintiff's alleged substance abuse problem. Alternatively, plaintiff argues that the evidence shows that Dymowski had a personal vendetta against him and that the drug abuse allegations were self-serving. Defendants disagree.

In his deposition, Dymowski said that he thought plaintiff had a drinking problem and described plaintiff as having symptoms consistent with a hangover. Dymowski also

---

[6] The court also said that under federal law, the use of the word "scab" could not be made the basis of the state action.

[7] We recognize that, generally, if a factual issue could be decided in more than one way, summary judgment is inappropriate. However, as the United States Supreme Court has made clear in *Garmon* and its progeny, the NLRB has primary jurisdiction to hear claims involving disputes that even arguably *could* involve activities protected or prohibited by NLRA sections 7 or 8.

said that, at one time, he told Potter that he was going to "rip plaintiff's head off." Plaintiff, in his affidavit, denied that he ever had a drug or alcohol problem. In his deposition, plaintiff claimed that Dymowski had a personal vendetta against him and referred to the grievances that Dymowski filed against him, the statement Dymowski made about ripping his head off and Dymowski's general dislike of him.

■ On summary judgment, the existence of questions of credibility generally precludes summary judgment. *Koch*, 66 Or App at 87. There is evidence from which a trier of fact could conclude that substance abuse is different from alcohol abuse and that Dymowski, for personal reasons, recklessly made allegations about plaintiff's purported substance abuse. We conclude that plaintiff offered sufficient evidence to defeat summary judgment on the issue of whether Dymowski acted with either actual knowledge of the falsity of his statements or with reckless disregard for their truth.

■■ Defendants, citing *Rice v. Comtek Mfg. of Oregon, Inc.*, 766 F Supp 1550 (D Or 1990), argue that even if a genuine issue of material fact exists on the question of actual malice, Dymowski did not publish the defamatory statement about substance abuse.[8] We disagree. In *Rice*, the plaintiff moved to amend his complaint to include a claim for defamation. He alleged that the defendant, a corporate officer, told him that he was being fired for "dealing in drugs." The trial court denied the motion, observing that "the majority view holds that 'statements made by one corporate employee during the performance of his duties within the hearing only of other corporate employees does not constitute publication.' *Messina v. Kroblin Transp. Sys., Inc.*, 903 F2d 1306, 1309 (10th Cir 1990) (Okla law)[.]" 766 F Supp at 1551. Even assuming that *Rice* correctly identifies the majority rule,[9] we

---

[8] Publication or communication of the allegedly defamatory statement to a third person is an essential element of an action for defamation. *State ex rel Advanced Dictating v. Dale*, 269 Or 242, 247, 524 P2d 1404 (1974).

[9] In *Rice v. Comtek Mfg. of Oregon, Inc.*, 766 F Supp 1550 (D Or 1990), the trial court cited two cases, *Messina v. Kroblin Transp. Systems, Inc.*, 903 F2d 1306, 1309 (10th Cir 1990), and *Jones v. Golden Spike Corp.*, 97 Nev 24, 26, 623 P2d 970 (1981), to support its assertion about what the majority rule is. *Messina* applies only Oklahoma law and, in *Jones*, the Nevada Supreme Court did not cite any cases for the proposition that the rule relied on in *Rice* is the majority rule. Instead, it cited one case that merely sets forth that rule.

believe that the better rule is set forth in the *Restatement (Second) Torts* § 577(1) (1976), and *comment i:*

"(1) Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed.

"\* \* \* \* \*

"i. *Communication by one agent to another agent of the same principal.* The communication within the scope of his employment by one agent to another agent of the same principal is a publication not only by the first agent but also by the principal and this is true whether the principal is an individual, a partnership or a corporation."

We conclude that Dymowski published the allegedly defamatory statement when he communicated it to Potter and Kastening.

■ Next, defendants argue that they had a qualified, or conditional, privilege to defame plaintiff. "A conditional privilege to make a defamatory statement can arise when it is made to protect the interests of an employer or when it is on a subject of mutual concern to the publisher and those to whom it is made." *Worley v. OPS*, 69 Or App 241, 245, 686 P2d 404, *rev den* 298 Or 334 (1984); *see also Wattenburg v. United Medial Lab.*, 269 Or 377, 380, 525 P2d 113 (1974). Defendants contend that, because Potter was Dymowski's and plaintiff's superior, he had a "legitimate interest" in learning about plaintiff. Plaintiff argues that Dymowski's motive in making the substance abuse allegation was personal and, therefore, not privileged.

■ Even if Dymowski had an improper motive in making that allegation, if his primary motive was proper, the communication could nonetheless be conditionally privileged. *See Schafroth v. Baker*, 276 Or 39, 46-47, 553 P2d 1046 (1976). Motive is generally not an appropriate factual issue to be disposed of by summary judgment. *Welch v. Bancorp Management Services*, 57 Or App 666, 673, 646 P2d 57 (1982), *aff'd in part, rev in part on other grounds* 296 Or 208, 675 P2d 172, *mod* 296 Or 713, 679 P2d 866 (1984). That is so here, because there is conflicting evidence about whether or not Dymowski's primary motive when he made the allegedly defamatory statement was personal. We conclude that the

trial court erred in granting summary judgment on plaintiff's second claim for defamation.[10]

■ Plaintiff's next assignment is that the trial court erred in granting summary judgment on his claim for intentional interference with economic relations. Plaintiff argues that the court incorrectly concluded that the NLRA preempts that claim. Defendants assert that plaintiff's claim fails because it is preempted and because plaintiff failed to prove that Dymowski used improper means or had an improper motive in making the substance abuse allegations. *See Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 621, 733 P2d 430 (1987).

The issue, again, is whether the conduct that is the basis of liability is actually or arguably protected or prohibited by the NLRA. *San Diego Unions*, 359 US at 245. If it is, then plaintiff's claim for intentional interference with economic relations is preempted by the NLRA. *Id.* The conduct on which that claim is based is that Dymowski falsely alleged plaintiff had a substance abuse problem.[11] That conduct, we have already determined, was arguably protected by the NLRA. Because that is the only conduct[12] that is the basis for plaintiff's claim for intentional interference with economic relations, we conclude that the NLRA preempts that claim. *See Operating Engineers v. Jones*, 460 US 669, 676, 103 S Ct 1453, 75 L Ed 2d 368 (1983). Plaintiff's remaining arguments do not require discussion.

■ Next, we discuss CWA's cross-appeal, in which it assigns error to the dismissal of its claims for contribution and indemnity against AT&T for failure to state a claim. In

---

[10] Defendants also argue that plaintiff's third amended complaint does not allege a defamation claim against CWA. Defendants do not refer us to any part of the record that indicates whether they raised that argument below. Even assuming that they did, the allegations in the pleading and the inferences that may be drawn from them are sufficiently broad to state a claim for defamation against CWA.

[11] The intentional interference claim does not allege that Dymowski acted with actual malice.

[12] Plaintiff's claim for intentional interference with economic relations also alleges that Dymowski had a personal vendetta against him. Any evidence about the purported vendetta goes solely to the issue of Dymowski's *motive* in making the substance abuse allegations. Even if the evidence is that Dymowski acted with an improper motive, that fact would make no difference, because we have concluded that Dymowski's conduct was arguably protected under the NLRA.

reviewing the granting of a motion to dismiss, we assume the truth of all allegations, as well as any inferences that may be drawn from them, and view them in the light most favorable to the nonmoving party. *Oksenholt v. Lederle Laboratories*, 294 Or 213, 215, 656 P2d 293 (1982). We determine whether the pleading states a claim as a matter of law. *Hansen v. Anderson*, 113 Or App 216, 218, 831 P2d 717 (1992).

 The first issue is whether the trial court erred in concluding that CWA's third-party complaint failed to state a claim for contribution. ORS 18.440 governs claims for contribution and provides, in part:

> "[W]here two or more persons become jointly or severally liable in tort for the same injury to person or property * * * there is a right of contribution among them even though judgment has not been recovered against all or any of them. There is no right of contribution from a person who is not liable in tort to the claimant."

CWA's third-party complaint for contribution alleges, in part:

> "At all times material, defendant Dymowski was acting within the course and scope of his employment of third-party defendant AT&T, and any statements made by Dymowski which form the basis of plaintiff's complaint against Dymowski and CWA were made responding to inquiries from Dymowski's superiors at AT&T to whom Dymowski had a duty, under penalty of discipline, to respond, and said communications were not promoted by, authorized by, or ratified by defendant CWA.
>
> "Plaintiff's claims for liability against CWA are derivative only, in so far as they allege defendant Dymowski was acting within the course and scope of his agency with CWA when making the communications which form the basis of plaintiff's complaint * * *."

In essence, CWA alleges that, if it is liable for Dymowski's statements, then AT&T is also liable, because when Dymowski made those statements, he was also acting in the course and scope of his employment for AT&T. Therefore, it is possible that both AT&T and CWA could be vicariously liable for Dymowski's allegedly defamatory statements.

AT&T argues, citing *Rice*, that it cannot be liable to plaintiff for defamation. It asserts that, if Dymowski was acting within the course and scope of his employment with

AT&T, then there was no publication of his allegations of substance abuse, because those allegations were made *to* AT&T, not *by* AT&T. We have already concluded that, under the *Restatement (Second) Torts* § 577(1), *comment i*, the communication by one agent to another agent of the same principal within the scope of employment is a publication by the first agent and the principal. Thus, under the facts alleged, AT&T could conceivably be held liable, as Dymowski's principal, for publishing a defamatory statement about plaintiff. CWA could also be held liable, because an agent may simultaneously serve two principals. *Blair v. United Finance Co.*, 228 Or 632, 635, 365 P2d 1077 (1961). Because CWA has pleaded facts from which it could be inferred that AT&T and CWA could be jointly liable for plaintiff's injuries, we conclude that CWA has stated a claim for contribution.[13]

The next issue is whether CWA's third-party complaint states a claim for indemnity. As a common law indemnity claimant, CWA must plead, in part, that as between it and AT&T, the obligation ought to be discharged by AT&T. *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 210, 493 P2d 138 (1972). CWA's claim for indemnity essentially realleges the same facts as its claim for contribution.[14] According to those allegations, both AT&T and CWA could be vicariously liable to plaintiff for injuries he suffered as a result of *Dymowski's* defamatory statements. However, CWA has pleaded no facts from which we could infer that AT&T sought from Dymowski defamatory statements about plaintiff. The indemnity complaint alleges that AT&T asked Dymowsky for information about plaintiff. At best, CWA's allegations suggest that, to the extent that Dymowski acted as an agent for CWA and AT&T, those entities are both vicariously liable as his principals. Accordingly, CWA has not pleaded that, as

[13] We note that CWA also argues that AT&T is liable for contribution because it wrongfully terminated plaintiff. Even assuming that is so, defamation and wrongful termination implicate distinct "injuries." *Compare Bickford v. Tektronix, Inc.*, 116 Or App 547, 550, 842 P2d 432 (1992), *with Anderson v. Evergreen International Airlines, Inc.*, 131 Or App 726, 733, 886 P2d 1068 (1994), *rev den* 320 Or 749 (1995).

[14] The indemnity claim includes additional allegations that Dymowski was not acting as CWA's agent when he made the allegedly defamatory statements. It follows that CWA could not be held liable to plaintiff if it proved those facts. Under those circumstances, it would not be entitled to indemnification.

between it and AT&T, any obligation owed to plaintiff should be discharged by AT&T.

On appeal, judgment on third claim for relief reversed and remanded; otherwise affirmed. On cross-appeal, judgment on claim for contribution reversed; otherwise affirmed.