Argued and submitted October 26, 2011, affirmed April 4, petition for review denied September 13, 2012 (352 Or 377)

Mari Anne GEST,
*Plaintiff-Appellant,*

*v.*

OREGON AFL-CIO
and Thomas Chamberlain,
*Defendants-Respondents.*

Multnomah County Circuit Court
090303274; A145876

275 P3d 1002

Kevin Keaney argued the cause for appellant. With him on the briefs was Kevin Keaney PC.

John S. Bishop argued the cause for respondents. With him on the brief was McKanna Bishop Joffee & Arms, LLP.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

In this action for intentional interference with economic relations, plaintiff alleged that defendant Oregon AFL-CIO (her former employer) and defendant Thomas Chamberlain (president of the Oregon AFL-CIO) "intentionally and maliciously" sought to prevent her from gaining employment with the Oregon School Employees Association (OSEA). The trial court granted defendants' motion for summary judgment and plaintiff now appeals. Because we agree with the trial court that plaintiff's claim is preempted by the National Labor Relations Act (NLRA), 29 USC §§ 151-169, we affirm.

Summary judgment is appropriate if the pleadings and evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C. We describe the pertinent facts in light of that standard.

The Oregon AFL-CIO is an unincorporated association of Oregon labor organizations that employs a small staff housed in two offices, one in Salem and one in Portland. In early April 2008, Chamberlain hired plaintiff to fill a temporary, entry-level position as a political organizer based in Salem. Chamberlain already was acquainted with plaintiff and knew that she had roughly 20 years of political and legislative organizing experience. Chamberlain hired plaintiff for the entry-level job despite reservations that she was overqualified and might not take direction well.

In her new position, plaintiff reported to Duke Shepard, then the Oregon AFL-CIO's political and legislative program director. Within weeks after plaintiff started work, Shepard informed Chamberlain that plaintiff was inappropriately challenging Shepard's leadership and disregarding his directions. Plaintiff, for her part, expressed concerns that her input and ideas were not being considered or respected, that she was subject to a "whole lot of nit picking," and that the Salem staff generally was undervalued.

During plaintiff's third month of employment, she and a group of the Salem-based Oregon AFL-CIO employees,

along with their union representatives, scheduled an "informal grievance meeting" with Chamberlain to discuss workplace morale. Plaintiff led the discussion at that June 30, 2008, meeting, and she later described the meeting in an e-mail she sent to other AFL-CIO employees. According to that e-mail, plaintiff began the meeting by stating that she was concerned by a lack of respect for the Salem staff. She then claimed during the meeting that, from her first day on the job, Chamberlain had "made it clear that he had problems with the staff in Salem and asked [her] to help him get rid of [another employee]." Plaintiff also asserted in the meeting that, a month into her employment, Chamberlain again had privately asked her to find a way to have the other employee fired and offered her a $10,000 raise if she could help him in that regard. In a declaration, Chamberlain later acknowledged that plaintiff had made those accusations during the June 30 meeting, but he denied their accuracy.[1] He also acknowledged that other staff members present at the meeting had raised concerns about his leadership style. Indeed, the record includes uncontradicted evidence that the employee whom Chamberlain allegedly wanted to fire was in the meeting and had himself expressed concerns about Chamberlain.

On the day after the meeting, Chamberlain informed plaintiff that he was terminating her employment without cause. Shortly thereafter, plaintiff began to inquire about employment with the OSEA. Plaintiff alleges that she was told in the course of those inquiries that Chamberlain had contacted the OSEA "trying to make sure [she would] never work in labor again." Plaintiff applied for a field representative position with the OSEA, but was not selected for an interview.

Plaintiff subsequently filed an unfair labor practice charge against the Oregon AFL-CIO with the National Labor Relations Board (NLRB), alleging that she improperly had been terminated for participating in the June 30 meeting.

---

[1] Chamberlain denies that he ever spoke to plaintiff about any dissatisfaction with the other employee or about any desire to have him fired. The dispute between plaintiff and Chamberlain on that point is not material to the preemption issue before us.

The NLRB refused to issue a complaint, and a settlement agreement on that charge was finalized in spring 2009.[2] Plaintiff filed this tort action in March of that year, alleging intentional interference with economic relations. In her complaint, plaintiff alleged that defendants had "intentionally and maliciously sought to prevent plaintiff from beginning employment with OSEA by contacting OSEA and urging OSEA not to employ plaintiff as an employee," causing the OSEA not to hire her. Plaintiff also accused Chamberlain of acting with an improper motivation:

> "When defendant Chamberlain contacted OSEA and sought to prevent plaintiff from being employed by OSEA, he was motivated by his intense personal dislike and animus towards plaintiff and desire to injure her. Defendant Chamberlain was so motivated *because plaintiff had confronted him on a plan to terminate an Oregon AFL-CIO employee and had refused to accept his offer of money to cooperate in the plan.* Defendant Chamberlain was acting out of personal spite and animus when he contacted OSEA and was not motivated to serve his employer, defendant Oregon AFL-CIO."

(Emphasis added.) Defendants moved for summary judgment. After a hearing on the motion, the trial court concluded that the conduct that formed the basis of plaintiff's tort claim was regulated by the NLRA, leaving the trial court without jurisdiction to hear that claim. Accordingly, the court granted summary judgment to defendants and, in a supplemental judgment, awarded defendants costs and disbursements. Plaintiff appealed both judgments.

---

[2] That charge specifically alleged that (1) Chamberlain had told plaintiff that he wanted her to find a way to get the other employee fired and that he would increase plaintiff's salary by $10,000 if she was able to find a way to do so, (2) the workplace became increasingly hostile after plaintiff twice disregarded Chamberlain's request, and (3) the June 30, 2008, meeting was an "informal grievance meeting" particularly scheduled to discuss the aforementioned workplace hostility. Plaintiff claimed that her firing was "a direct result of [her] participation in the informal grievance meeting," and, therefore, violated the NLRA. The settlement agreement that Chamberlain approved included an express "non-admission clause" specifying that defendant Oregon AFL-CIO was not admitting to any NLRA violation. Plaintiff did not sign the settlement agreement but also did not challenge its approval by the NLRB, allowing the settlement to become final in late April 2009.

The single issue we address on appeal is whether the trial court erred in determining that the NLRA preempted plaintiff's claim for intentional interference with economic relations.[3] "The NLRA provides for the comprehensive regulation of labor-management relations and vests the NLRB with jurisdiction to resolve disputes involving the regulated conduct." *Wallulis v. Dymowski*, 134 Or App 219, 224, 895 P2d 315 (1995), *aff'd*, 323 Or 337, 918 P2d 755 (1996). Section 7 of the NLRA confers various rights on employees, including the right "to engage in * * * concerted activities for the purpose of * * * mutual aid or protection." 29 USC § 157. Section 8 prohibits unfair labor practices, including interference with the rights that section 7 protects. 29 USC § 158.

In passing the NLRA, Congress largely displaced state regulation of industrial relations. *Wisconsin Dept. of Industry v. Gould Inc.*, 475 US 282, 286, 106 S Ct 1057, 89 L Ed 2d 223 (1986). Under the general rule governing NLRA preemption, state jurisdiction "must yield to the exclusive primary competence" of the NLRB in all labor disputes that involve activities that the NLRA protects, prohibits, or *arguably* protects or prohibits. *San Diego Unions v. Garmon*, 359 US 236, 245, 79 S Ct 773, 3 L Ed 2d 775 (1959).

Thus, the question posed by defendant's summary judgment motion was whether the record before the trial court established, as a matter of law, that plaintiff's claim at least arguably involved activities that were protected or prohibited by the NLRA. *See Wallulis*, 134 Or App at 227 n 7 (describing that standard). Based on the complaint and on undisputed facts in the record, we conclude that it did. Accordingly, as explained below, the trial court ruled correctly when it granted defendant summary judgment on the ground that plaintiff's claim was preempted by the NLRA.

Plaintiff based her tort complaint on allegations that Chamberlain had interfered with her efforts to gain

---

[3] Plaintiff also challenges the supplemental judgment in which the trial court awarded defendants costs and disbursements. Her challenge to that award is premised solely on her disagreement with the trial court's preemption ruling. Because we agree with that ruling and therefore affirm the general judgment, we also affirm the supplemental judgment awarding defendants their costs and disbursements.

employment with the OSEA both because she had refused to accept what she characterized as a bribe—Chamberlain's alleged offer to pay her money if she helped get another employee fired—and because she had confronted Chamberlain about that bribe. Undisputed evidence in the record links those allegations to activity that was at least *arguably* protected by the NLRA in two respects. First, at least one major confrontation between plaintiff and Chamberlain about the employee-firing issue occurred during the June 30 informal grievance meeting, which focused on workplace morale issues. As plaintiff concedes on appeal, that meeting involved "concerted activity" protected under section 7 of the NLRA. Although the term " 'concerted activit[y]' is not defined in the Act[,] * * * it clearly enough embraces the activities of employees who have joined together in order to achieve common goals." *NLRB v. City Disposal Systems Inc.*, 465 US 822, 830, 104 S Ct 1505, 79 L Ed 2d 839 (1983). That is precisely what plaintiff and her coworkers did when they met with Chamberlain on June 30—they sought, as a group, to address his allegedly poor treatment of staff in the AFL-CIO's Salem office. Thus, the meeting itself involved "concerted activity" protected by the NLRA.[4]

Second, undisputed evidence establishes that the employee-firing issue was an integral part of the general subject matter of the informal grievance meeting: complaints about Chamberlain's management style. As noted, plaintiff herself asserted in an e-mail that she had raised the issue in that meeting, accusing Chamberlain of having repeatedly asked her to help him "get rid of" the other employee. It is undisputed that the other employee also was present at the meeting, along with additional AFL-CIO staff who also spoke about perceived intimidation in the workplace. In a contemporaneous letter that plaintiff and her colleagues addressed to the AFL-CIO board of directors, plaintiff described Chamberlain's efforts to fire the other employee as

---

[4] The record also includes evidence suggesting that, in addition to confronting Chamberlain about the employee-firing matter at the June 30 meeting, plaintiff privately raised that issue with Chamberlain on other occasions. The possible existence of those additional "confrontations" does not, however, diminish the significance of the undisputed evidence that plaintiff also confronted Chamberlain during the June 30 meeting.

a "specific example[ ]" of Chamberlain's poor treatment of staff and "hypocritical behavior" that had resulted in low workplace morale. The letter also included a statement from the other employee, asserting that his colleagues' awareness that Chamberlain wanted to fire him "create[d] a hostile work environment for the employees that are aware of [Chamberlain's] attempt to get help from a fellow union employee to fire another union employee * * *." Plaintiff has not disclaimed responsibility for that letter or disavowed the statements in it.

In sum, the record includes undisputed evidence that plaintiff confronted Chamberlain at a meeting that itself involved "concerted activity" and that focused on workplace-morale problems, including those caused by Chamberlain's alleged attempts to get one employee—plaintiff—to help him fire another. That evidence is enough to establish that plaintiff's confrontation of Chamberlain about the employee-firing issue at least *arguably* was part of "concerted activities for the purpose of * * * mutual aid or protection" and was, therefore, protected under section 7. It follows that any retaliatory action that defendants took because of the confrontation was at least arguably prohibited under section 8. Consequently, plaintiff's tort claim—which was based on that alleged retaliation—was preempted by the NLRA.

Affirmed.